Harsha, J.
{¶ 1} Based upon his possession, funding and sales of certain controlled substance analogs, Michel L. Ross pleaded guilty to engaging in a pattern of corrupt activity, conspiracy to engage in a pattern of corrupt activity, and aggravated funding of drug trafficking. Ross failed to appear for the sentencing hearing and remained at large for three years. Upon his apprehension, he received an aggregate 30-year prison term.
{¶ 2} First Ross asserts that his conviction should be overturned because his acts occurred between October 17, 2011 and December 18, 2011, but selling and possessing *85 controlled substance analogs was not a crime until December 20, 2012. Ross's argument is meritless because the Supreme Court of Ohio recently rejected this argument and held that controlled substance analogs were criminalized on October 17, 2011, the effective date of H.B. 64. which treated controlled substance analogs as controlled substances. Therefore, his acts were criminal when he committed them. We overrule Ross's first assignment of error.
{¶ 3} Next Ross asserts that the controlled substance analog statute is unconstitutionally vague on its face and as applied to him, violating his constitutional right to due process of law. However, we agree with the federal decisions analyzing a similar federal controlled substance analog statute, and with the decisions from the Twelfth and Ninth District Courts of Appeals; thus we hold that the controlled substance analog statute is neither unconstitutionally vague on its face or as applied to Ross. We overrule Ross's second assignment of error.
{¶ 4} Ross also contends that he received ineffective assistance of counsel at both the initial plea hearing and the hearing to withdraw his guilty plea because his counsel failed to challenge the controlled substance analog statute. However, because there was no legal support for his argument, Ross cannot show that a challenge would have had a reasonable probability of success. Therefore, he cannot show that his counsel's performance fell below an objective standard of reasonableness. Counsel has no duty to press untested legal theories. And even if we assume counsel's performance was deficient, Ross can show no prejudice from his counsel's failure to challenge the statute, i.e., a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. We overrule Ross's third assignment of error.
{¶ 5} Next Ross asserts that the trial court erred when it refused to allow him to withdraw his guilty plea. He argues that he has a complete defense based on his contentions that (1) his acts were not criminalized when he committed them and (2) the controlled substance analog statute is unconstitutionally vague. However, we reviewed and rejected both arguments under Ross's first two assignments of error. Our review of the record reflects that Ross had a change of heart regarding his guilty plea, which is not a reasonable legitimate basis for withdrawing a plea. Accordingly, the trial court did not act arbitrarily, unreasonably or unconscionably in denying Ross's motion to withdraw his guilty pleas. We overrule Ross's fourth assignment of error.
{¶ 6} Finally, Ross asserts that the trial court's imposition of consecutive sentences was not supported by the evidence and he was sentenced for offenses that should have been merged as allied offenses. The state contends that the sentencing was made pursuant to a negotiated plea agreement and is unreviewable. The record reveals that: (1) Ross agreed to the 30-year consecutive prison term as part of his negotiated plea agreement, (2) statutory findings and evidence supporting those findings are not required prior to imposing consecutive sentences that are part of a jointly recommended sentencing agreement, and (3) RICO offenses do not merge with their predicate offenses. We find that the agreed sentence was jointly recommended, imposed by the sentencing judge, and authorized by law. Because, it is not reviewable under R.C. 2953.08(D)(1), we do not undertake a review of the merits of Ross's fifth assignment of error.
{¶ 7} We affirm the trial court's judgment.
*86 I. FACTS
{¶ 8} In 2012, a Scioto County Grand Jury indicted Ross on 21 counts, which consisted of one count each of engaging in a pattern of corrupt activity and conspiracy to engage in a pattern of corrupt activity (Ohio RICO violations), one count of aggravated funding of drug activity, two counts of trafficking in drugs, ten counts of aggravating trafficking in drugs-three of which were in the vicinity of a juvenile, two counts of aggravated possession of drugs, one count of trademark counterfeiting, one count of weapon under a disability, one count of trafficking in crack cocaine in the vicinity of a school and one count of possession of crack cocaine.
{¶ 9} As part of a negotiated plea agreement Ross pleaded guilty to the two Ohio RICO violations and one drug offense: Count I-engaging in a pattern of corrupt activity in violation of R.C. 2923.32(A)(1), Count II-conspiracy to engage in a pattern of corrupt activity in violation of R.C. 2923.01, and Count III-aggravated funding of drug activity in violation of R.C. 2925.05(A) /(C)(1). In return the state agreed to dismiss the remaining counts. At the plea hearing the trial court placed the agreement on the record in open court, stating that if Ross abided by the conditions of bond, Ross would receive a 10-year prison term, but if he failed then he would be sentenced to a 30-year term. The sentencing hearing was set for July 9, 2013, but Ross breached the conditions of bond and failed to appear. Ross remained at large for three years but was eventually apprehended in Cuyahoga County using a false name. He was returned to Scioto County in March 2016.
{¶ 10} Upon his return Ross filed a motion to withdraw his guilty plea, which the trial court denied. The trial court sentenced Ross to an 11-year prison term on count I, 8-year term on count II,[1] and 11-year term on count III. The trial court ordered the sentence to run consecutively for a total aggregate prison term of 30 years as part of "a jointly recommended and agreed to sentence."
{¶ 11} Ross appealed.
II. ASSIGNMENTS OF ERROR
{¶ 12} Ross assigns the following errors for our review:
I. IT WAS PLAIN ERROR FOR THE TRIAL COURT TO CONVICT MR. ROSS FOR INNOCENT ACTS, IN VIOLATION OF HIS CONSTITUTIONAL RIGHT TO BE FREE FROM EX POST FACTO CONVICTIONS.
II. THE "CONTROLLING SUBSTANCE ANALOG" STATUTE UNDER WHICH MR. ROSS WAS CONVICTED WAS UNCONSTITUTIONALLY VAGUE ON ITS FACE AND IN ITS APPLICATION, AND HIS CONVICTION WAS A FUNDAMENTAL ERROR THAT VIOLATED HIS CONSTITUTIONAL RIGHT TO DUE PROCESS OF LAW.
III. COUNSEL FOR MR. ROSS PROVIDED INEFFECTIVE ASSISTANCE AT BOTH THE INITIAL PLEA HEARING AND THE HEARING TO WITHDRAW HIS PLEA OF GUILTY.
IV. THE COURT ERRED BY FAILING TO ALLOW MR. ROSS TO WITHDRAW HIS PLEA OF GUILTY.
*87 V. THE TRIAL JUDGE ERRED TO MR. ROSS'S PREJUDICE BECAUSE AN ORDER IMPOSING CONSECUTIVE SENTENCES IN THIS CASE IS NOT SUPPORTED BY THE FACTS.
III. LAW AND ANALYSIS
A. Controlled Substance Analog Statute
1. Controlled Substance Analogs were Criminalized on October 17, 2011
{¶ 13} Ross argues that his conviction should be overturned because "controlled substance analogs" were not criminalized until December 20, 2012, when 2012 Sub.H.B. No. 334 ("H.B. 334") became effective.[2] Ross contends that his conviction involved the possession, funding and sale of controlled substance analogs from acts that occurred between October 17, 2011 and December 18, 2011. Ross argues that the Tenth District Court of Appeals decision in State v. Smith , 10th Dist. Franklin Nos. 14AP-154, 2014-Ohio-5303, 2014 WL 6726161 is directly on point and mandates that his conviction be vacated and he be immediately released from prison. For support Ross also cites two subsequent Tenth District decisions: State v. Mohammad , 10th Dist. Franklin No. 14AP-662, 2015-Ohio-1234, 2015 WL 1446481 and State v. Mobarak , 10th Dist. Franklin No. 14AP-517, 2015-Ohio-3007, 2015 WL 4554370.
{¶ 14} Ross did not raise this objection below so our review is limited to whether the trial court committed plain error. See, e.g., State v. Lang , 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 123 ; State v. Neal , 2016-Ohio-64, 57 N.E.3d 272, ¶ 36 (4th Dist.). Appellate courts take notice of plain error "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long , 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus; State v. Bethel , 4th Dist. Jackson No. 13CA11, 2014-Ohio-3861, ¶ 7, 2014 WL 4384682. To prevail Ross "must show that an error occurred, that the error was plain, and that but for the error, the outcome of the trial clearly would have been otherwise." State v. Mammone , 139 Ohio St.3d 467, 2014-Ohio-1942, 13 N.E.3d 1051, ¶ 69. The defendant bears the burden of proof on the issue. See State v. Cooper , 170 Ohio App.3d 418, 2007-Ohio-1186, 867 N.E.2d 493, ¶ 31 (4th Dist.) ("The defendant carries the burden to establish the existence of plain error, unlike the situation in a claim of harmless error, where the burden lies with the state").
{¶ 15} After Ross filed his appellate brief the Supreme Court of Ohio rejected the Tenth District's analysis in Smith, supra , and reversed the judgments in Mohammad and Mobarak, supra. See State v. Shalash , 148 Ohio St.3d 611, 2016-Ohio-8358, 71 N.E.3d 1089. In Shalash , the Supreme Court of Ohio accepted a certified conflict between the Tenth District's holdings in Mohammad and Mobarak , which held that the sale or possession of controlled substance analogs were not criminalized until December 20, 2012 by H.B. 334, and the Twelfth District's holding in State v. Shalash , 2015-Ohio-3836, 41 N.E.3d 1263 (12th Dist.), which held that they were criminalized as of October 17, 2011 by 2011 Sub.H.B. No. 64 ("H.B. 64"). The Court held that "controlled substance analogs" were criminalized as of October *88 17, 2011, the effective date of H.B. 64 and affirmed the Twelfth District's judgment:
Although controlled-substance analogs were not specifically proscribed by R.C. Title 29 when Shalash was arrested and indicted for selling them, other provisions of the Revised Code incorporated controlled-substance analogs into R.C. Title 29. Specifically, R.C. 3719.013 states that controlled-substance analogs "shall" be treated as a controlled substance for purposed of "any provision of the Revised Code."
The certified conflict before us asks "whether 'controlled substance analogs' were criminalized as of October 17, 2011, the effective date of House Bill 64." We conclude that H.B. 64 criminalized controlled-substance analogs, and we affirm the judgment of the court of appeals.
Shalash , 148 Ohio St.3d at ¶ 13-14, 2016 -Ohio- 8358, 71 N.E.3d 1089.
{¶ 16} In his reply brief Ross concedes that Supreme Court of Ohio's decision in Shalash "impacts this appeal." However, he raises a new issue and argues that the application of Shalash to him but not to Thomas Smith, the criminal defendant in State v. Smith, supra , is a violation of Ross's right to equal protection under the law: "Mr. Ross is not being treated equally under Ohio law as was Mr. Smith." In other words Smith enjoyed the benefit of an erroneous legal decision, while Ross (and Shalash and Mohammad and Mobarak) bore the consequences of a subsequent correction of the law. Ross contends this is unconstitutionally unfair to him.
{¶ 17} However, the purpose of a reply brief is to afford the appellant an opportunity to respond to the appellee's brief, not to raise an issue for the first time. "Appellate courts generally will not consider a new issue presented for the first time in a reply brief." State v. Spaulding , 2016-Ohio-8126, 89 N.E.3d 554, ¶ 179, reconsideration denied, 147 Ohio St.3d 1480, 2016-Ohio-8492, 66 N.E.3d 766, ¶ 179 ; State v. Coleman , 4th Dist. Highland No. 16CA11, 2017-Ohio-1067, ¶ 11, 2017 WL 1103571. " 'The appellant cannot raise an issue for the first time in a reply brief, and thus effectively deny the appellee an opportunity to respond to it.' " State v. Nguyen , 4th Dist. Athens No. 12CA14, 2013-Ohio-3170, ¶ 34, 2013 WL 3816605, quoting Nemeth v. Nemeth , 11th Dist. Geauga No. 2007-G-2791, 2008-Ohio-3263, ¶ 22, 2008 WL 2582517 ; see State v. Murnahan , 117 Ohio App.3d 71, 82, 689 N.E.2d 1021 (2d Dist.1996) (refusing to consider error asserted in reply brief, because "[a]n appellant may not use a reply brief to raise new issues or assignments of error"); State v. McComb , 2nd Dist. Montgomery No. 26481, 2015-Ohio-2556, ¶ 14, 2015 WL 3932451 (refusing to consider error raised for the first time in reply brief.); State v. Shaffer , 11th Dist. Portage No. 2002-P-0133, 2004-Ohio-336, ¶ 39, 2004 WL 144246 (refusing to consider issue that trial counsel was ineffective in failing to object to testimony of police officers, where issue was raised only in appellant's reply brief); State ex rel. Petro v. Gold , 166 Ohio App.3d 371, 2006-Ohio-943, 850 N.E.2d 1218, ¶ 76 (10th Dist.) (refusing to consider issue that was raised only in reply brief). We therefore decline to consider Ross's equal protection constitutional challenge in this context.
{¶ 18} The Supreme Court of Ohio has held that controlled substance analogs were criminalized as of October 17, 2011; we reject Ross's argument and overrule his first assignment of error.
2. The Controlled Substance Analog Statute is not Unconstitutionally Vague
{¶ 19} Ross argues that the controlled substance analog statute under which he *89 was convicted was unconstitutionally vague on its face and in its application. Specifically, he contends the statute is vague on its face in that the definition of "analog" is so impermissibly vague that it violates his right to due process of law. Ross argues that the definition of "controlled substance analog" in R.C. 3719.01(HH)(1) is vague because for a substance to be a controlled substance analog the chemical structure must be "substantially similar to the chemical structure of a controlled substance in schedule I or II." He argues that "substantially similar" is an undefined term and a completely subjective one that cannot be uniformly applied with consistent standards, creating an "arbitrary enforcement" problem.
{¶ 20} Ross did not raise this issue below; therefore he again forfeits all but plain error.
{¶ 21} "[S]tatutes enjoy a strong presumption of constitutionality." State v. Stidam , 4th Dist. Adams No. 15CA1014, 74 N.E.3d 787, 2016-Ohio-7906, ¶ 19, quoting State v. Hoover , 123 Ohio St.3d 418, 2009-Ohio-4993, 916 N.E.2d 1056, ¶ 8. "A statute will be upheld unless the challenger can meet the burden of establishing beyond a reasonable doubt that the statute is unconstitutional." Id. We use a de novo standard of review to assess errors based upon violations of constitutional law. Id. citing State v. Burgette , 4th Dist. Athens No. 13CA50, 2014-Ohio-3483, ¶ 10, 2014 WL 3940296.
{¶ 22} "Under the vagueness doctrine, statutes which do not fairly inform a person of what is prohibited will be found unconstitutional as violative of due process." State v. Carrick , 131 Ohio St.3d 340, 2012-Ohio-608, 965 N.E.2d 264, ¶ 14 ; State v. Reeder , 18 Ohio St.3d 25, 26, 479 N.E.2d 280 (1985), citing Connally v. Gen. Constr. Co. , 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926) ; Columbus v. Thompson , 25 Ohio St.2d 26, 266 N.E.2d 571 (1971). However, " '[i]mpossible standards of specificity are not required. * * * The test is whether the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices.' " Id. , quoting Jordan v. De George , 341 U.S. 223, 231-232, 71 S.Ct. 703, 95 L.Ed. 886 (1951).
{¶ 23} "A statute may be challenged as unconstitutional on the basis that it is invalid on its face or as applied to a particular set of facts." Stidam at ¶ 18, quoting State v. Lowe , 112 Ohio St.3d 507, 861 N.E.2d 512, 2007-Ohio-606, ¶ 17.
a. Facial Challenge
{¶ 24} A facial challenge requires that "the challenging party * * * show that the statute is vague 'not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all.' " State v. Carrick , 131 Ohio St.3d 340, 965 N.E.2d 264, 2012-Ohio-608, ¶ 15, quoting State v. Anderson , 57 Ohio St.3d 168, 171, 566 N.E.2d 1224 (1991). In other words, "the challenger must show that upon examining the statute, an individual of ordinary intelligence would not understand what he is required to do under the law." Id. Therefore, Ross "must prove, beyond a reasonable doubt, that the statute was so unclear that he could not reasonably understand that it prohibited the acts in which he engaged." Id. ; 25 Ohio Jurisprudence 3d, Criminal Law, Section 8, at 106 (1981).
{¶ 25} The definition of "controlled substance analog in R.C. 3719.01(HH) is:
(HH)(1) "Controlled substance analog" means, except as provided in division (HH)(2) of this section, a substance to which both of the following apply:
*90 (a) The chemical structure of the substance is substantially similar to the structure of a controlled substance in schedule I or II.
(b) One of the following applies regarding the substance:
(i) The substance has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II.
(ii) With respect to a particular person, that person represents or intends the substance to have a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II.
(2) "Controlled substance analog" does not include any of the following:
(a) A controlled substance;
(b) Any substance for which there is an approved new drug application;
(c) With respect to a particular person, any substance if an exemption is in effect for investigational use for that person pursuant to federal law to the extent that conduct with respect to that substance is pursuant to that exemption;
(d) Any substance to the extent it is not intended for human consumption before the exemption described in division (HH)(2)(b) of this section takes effect with respect to that substance.
{¶ 26} Two other Ohio appellate courts have addressed whether the definition of controlled substance analog as set forth in R.C. 3701.01(HH) is unconstitutionally vague and have determined that it is not. See State v. Jackson , 9th Dist. Summit Nos. 27132, 2015-Ohio-5246, 2015 WL 9048666 (finding that the controlled analog statute, R.C. 3179.013, is not unconstitutionally vague as applied to the analog Pentedrone); State v. Shalash , 2014-Ohio-2584, 13 N.E.3d 1202 (12th Dist.) (finding the definition of controlled substance analog, R.C. 3719.01(HH) is not unconstitutionally vague on its face).[3] In both Jackson and Shalash , the courts found that the Ohio controlled substance analog statutory definition is very similar to the definition in federal law, 21 U.S.C. 802(32), and "every federal circuit court that has addressed this issue has 'held that the CSA Analogue Provision is not unconstitutionally vague.' " Shalash at ¶ 28, quoting United States v. Turcotte , 405 F.3d 515, 531-532 (7th Cir. 2005) ; Jackson at ¶ 31 ("The Twelfth District recently rejected a void for vagueness challenge to the definition of 'controlled substance analog' and relied upon federal case law to do so. We agree that the federal case law interpreting the Federal Act is instructive and constitutes persuasive authority in this matter.").
*91 {¶ 27} In Shalash the court quoted the following excerpt from United States v. Granberry , 916 F.2d 1008, 1010 (5th Cir. 1990) to support its reasoning:
[T]he term "controlled substance analogue" in § 813 is clearly and specifically defined, in terms readily comprehensible to the ordinary reader. It provides adequate notice of what conduct is prohibited. The statute makes plain that drugs which have been chemically designed to be similar to controlled substances, but which are not themselves listed on the controlled substance schedules, will nonetheless be considered as schedule I substances if 1) they are substantially similar chemically to drugs that are on those schedules, 2) if they produce similar effects on the central nervous system as drugs that are on those schedules, or 3) are intended or represented to produce effects similar to those produced by drugs that are on those schedules. There is nothing vague about the statute.
Granberry at 1010 ; see also U.S. v. Reece , W.D. La. No.12-00146, 2013 WL 3865067, *1,*6 (July 24, 2013) ("T]he Controlled Substances Act analogue provision, 21 U.S.C. § 813, which incorporates the definition of "controlled substance analogue" found at 21 U.S.C. § 802(32)(A), is not unconstitutionally vague * * * no appellate circuit has held that the statute is unconstitutionally vague as applied to any substance. Six circuits-including the Fifth Circuit-have held that the analogue statute is not unconstitutionally vague as applied to various substances.").
{¶ 28} Various arguments challenging the controlled substance analog definition have been repeatedly rejected by the federal courts:
Appellant raises several other arguments in support of his contention that R.C. 3719.01(HH) is void for vagueness, including that "the chemical structure of a substance is not commonly known to a reasonably educated person"; that "[i]f the State has to have the substance tested by an expert to determine its chemical makeup, then it is unreasonable to believe that the ordinary person would be aware that the substance they possess is contrary to the substances allowed by the statute"; that "a reasonably educated person would not know if a substance has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than that of a controlled substance in Schedule I or II." However, these same arguments have been rejected by federal courts interpreting the federal CSA statute in 21 U.S.C. 802(32).
Shalash at ¶ 31, citing United States v. Niemoeller , S.D.Ind., No. IP 02-09-CR-1 H/F, 2003 WL 1563863, at *4 (Jan. 24, 2003).
{¶ 29} We agree with the reasoning in Granberry, Shalash and Jackson and reject Ross's argument that R.C. 3719.01(HH)'s definition of "controlled substance analog" is unconstitutionally vague on its face. An individual of ordinary intelligence would understand the meaning and import of the language defining a controlled substance analog as one that is "substantially similar" in chemical structure and effect to a schedule I or II controlled substance.
b. As Applied Challenge
{¶ 30} If the statute survives a facial challenge, a defendant may succeed on a vagueness claim only by demonstrating that the statute is impermissibly vague as applied to that defendant. State v. Williams , 88 Ohio St.3d 513, 532, 728 N.E.2d 342 (2000).
*92 {¶ 31} If the statute is being challenged as applied to the circumstances of a particular case, the challenger "contends that application of the statute in the particular context in which he has acted * * * [is] unconstitutional." State v. Lowe , 112 Ohio St.3d 507, 2007-Ohio-606, 861 N.E.2d 512, ¶ 17. The burden is on the challenger to present clear and convincing evidence of a presently existing set of facts that makes the statute void and unconstitutional when applied. Cleveland Gear Co. v. Limbach , 35 Ohio St.3d 229, 520 N.E.2d 188 (1988).
{¶ 32} Because he pleaded guilty, Ross waived his right to require the state to present evidence that the analog in question was substantially similar to a controlled substance. Ross is unable to present any evidence that the controlled substance analog statute is unconstitutional as applied to the substance he was charged with. In contrast the defendants in State v. Jackson , 9th Dist. Summit Nos. 27132, 2015-Ohio-5246, 2015 WL 9048666 filed a pretrial motion with the trial court to declare the controlled substance analog statute unconstitutionally vague as applied to the analog Pentedrone. The trial court held a two-day hearing at which four experts in the fields of chemistry and pharmaceutical chemistry testified about the analog at issue. The appellate court reviewed the extensive expert testimony presented at the hearing and found the controlled substance analog statute to be constitutional as applied to the challengers:
The federal courts have recognized the difficulty the legislature faces in drafting analog statutes, "[g]iven the creativity of amateur chemists." To be effective, controlled substance analog statutes must retain some degree of elasticity. Otherwise, "there is a genuine potential that the creation of such substances could outpace any efforts by authorities to identify and catalog them." Having reviewed the record and the relevant authority, we cannot conclude that Appellants have proven beyond a reasonable doubt that the analog statute is unconstitutionally vague as applied to them.
Consequently, the trial court did not err by finding the statute constitutional as applied. Because we have determined that the statute is constitutional as applied to Appellants, we need not consider whether it is unconstitutionally vague in all its applications. (Citations omitted.)
Jackson at ¶ 37.
{¶ 33} Here, Ross claims that he "testified that, prior to selling the products in question, he demanded (and received) chemical analyses from his supplier that the substances were not substantially similar to any controlled substance found in Schedule I or II." However his testimony was provided three years after his guilty plea and in support of his motion to withdraw guilty plea. It is not admissible expert testimony and it proves nothing about the analog in question. Although Ross's counsel challenged the analog in a pretrial motion and sought a Daubert hearing, Ross negotiated a plea agreement before the trial court ruled on his motion. Because Ross pleaded guilty and waived trial, he forfeited his Daubert hearing so the record does not contain evidence sufficient to overcome the clear and convincing standard Ross must meet to invalidate a criminal statute on constitutional vagueness grounds.
{¶ 34} We hold that the definition of controlled substance analog, R.C. 3719.01(HH), is not unconstitutionally vague on its face or as applied to Ross. We overrule Ross's second assignment of error.
*93 B. Ineffective Assistance of Counsel
{¶ 35} The third assignment of error contends that Ross received ineffective assistance of counsel at the initial plea hearing and when he sought to withdraw his guilty plea because at neither stage of the proceedings did his attorney raise constitutional vagueness objections to the controlled substance analog statute and related evidentiary concerns.
{¶ 36} To prevail on a claim of ineffective assistance of counsel, a criminal defendant must establish (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. State v. Short , 129 Ohio St.3d 360, 2011-Ohio-3641, 952 N.E.2d 1121, ¶ 113 ; Strickland v. Washington , 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Failure to establish either part of the test is fatal to an ineffective-assistance claim. Strickland at 697, 104 S.Ct. 2052 ; State v. Bradley , 42 Ohio St.3d 136, 143, 538 N.E.2d 373 (1989).
{¶ 37} Ross cannot prove deficient performance by counsel's failure to file a motion challenging the constitutionality of the controlled substance analog statute at either stage of the case. There was no legal authority in Ohio supporting this challenge when Ross's case was in the pretrial stage. And, as we previously noted, all federal circuit courts that analyzed the similar federal statute have rejected this argument as early as 1990. When Ross sought to withdraw his guilty plea in 2016, the Twelfth and Ninth Districts had rejected it too. See State v. Shalash , 2014-Ohio-2584, 13 N.E.3d 1202 (12th Dist.) ; State v. Jackson , 9th Dist. Summit Nos. 27132, 2015-Ohio-5246, 2015 WL 9048666. Ross has failed to establish that the motion stood a reasonable probability of success. State v. Adkins , 161 Ohio App.3d 114, 2005-Ohio-2577, 829 N.E.2d 729, ¶ 14 ("To prove ineffective assistance on the basis of a failure to file a particular motion, a defendant must establish that the motion stood a reasonable probability of success."). Therefore, he cannot establish that his counsel's performance fell below an objective standard of reasonableness. See State v. Sanders , 92 Ohio St.3d 245, 273-275, 2001-Ohio-189, 750 N.E.2d 90 (counsel has no duty to press "untested or rejected legal theories").
{¶ 38} In the pretrial stage of Ross's case, there was no case law in any district in Ohio to support this argument. And in 2016, when he sought to withdraw his plea, there was a split in other appellate districts and no legal authority supporting Ross in our district. Even if counsel had made the argument in 2016 and succeeded at the trial court level, it would have ultimately failed because it was soundly rejected by the Supreme Court of Ohio in State v. Shalash , 148 Ohio St.3d 611, 2016-Ohio-8358, 71 N.E.3d 1089, as discussed in our analysis of Ross's first assignment of error. Therefore, Ross cannot establish deficient performance by counsel's failure to press this untested, and subsequently rejected, legal theory.
{¶ 39} Moreover, the record shows that Ross's counsel pursued a defense strategy challenging the analog: counsel filed a motion for a Daubert hearing on analog substances and sought to exclude the testimony of the state's expert witness. At the same time counsel filed a motion for funding for an expert in pharmaceutical chemistry to assist Ross in challenging the analog. It is likely no coincidence that within a week of those filings, Ross's counsel and the state had reached a negotiated plea agreement in which Ross would plead guilty to only three counts of the 21-count indictment and receive only 10 years of a *94 potential prison term exceeding 30 years, with consideration for judicial release in five years.
{¶ 40} But even if we were to assume trial counsel's performance was deficient for failing to raise these challenges, Ross cannot demonstrate prejudice, i.e., a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. We overrule his third assignment of error.
C. Denial of Motion to Withdraw Guilty Plea
{¶ 41} Ross contends that the trial court erred in denying his motion to withdraw his guilty plea because he had a complete defense based on his arguments that (1) his acts were not criminal when he committed them; (2) the controlled substance analog statute is unconstitutionally vague; and (3) he believes he would have prevailed at a Daubert hearing and the trial court would have excluded the state's evidence on the analog.
{¶ 42} Crim.R. 32.1 states: "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." " '[A] presentence motion to withdraw a guilty plea should be freely and liberally granted.' " State v. Ketterer , 126 Ohio St.3d 448, 2010-Ohio-3831, 935 N.E.2d 9, ¶ 57, quoting State v. Xie , 62 Ohio St.3d 521, 527, 584 N.E.2d 715 (1992). However, "[a] defendant does not have an absolute right to withdraw a guilty plea prior to sentencing. A trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea." Xie at paragraph one of the syllabus.
{¶ 43} A trial court possesses discretion to grant or deny a presentence motion to withdraw a plea, and we will not reverse the court's decision absent an abuse of that discretion. State v. Fry , 4th Dist. Scioto No. 14CA3604, 2014-Ohio-5016, ¶ 13, 2014 WL 5812263. Abuse of discretion implies the court's attitude is unreasonable, unconscionable, or arbitrary. State v. Adams , 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court. State v. Elkins , 4th Dist. Lawrence No 16CA15, 77 N.E.3d 360, 2016-Ohio-8579, ¶ 7.
{¶ 44} We consider several factors when determining whether a trial court abused its discretion by denying a presentence motion to withdraw a plea:
(1) whether the accused was represented by highly competent counsel;
(2) whether the accused was given a full Crim.R. 11 hearing before entering the plea;
(3) whether a full hearing was held on the withdrawal motion;
(4) whether the trial court gave full and fair consideration to the motion;
(5) whether the motion was made within a reasonable time;
(6) whether the motion set out specific reasons for the withdrawal;
(7) whether the accused understood the nature of the charges and the possible penalties; and
(8) whether the accused was perhaps not guilty or had a complete defense to the charges.
See Fry at ¶ 14, quoting State v. Campbell , 4th Dist. Athens No. 08CA31, 2009-Ohio-4992, ¶ 7, 2009 WL 3042045.
{¶ 45} However, a change of heart or mistaken belief about the plea is not a reasonable basis requiring a trial court to *95 permit the defendant to withdraw the plea. Id. , citing State v. Lambros , 44 Ohio App.3d 102, 103, 541 N.E.2d 632 (8th Dist.1988).
{¶ 46} Here Ross sought to withdraw his guilty plea because at the time he pleaded guilty, he believed the state's evidence could prove the analog to be substantially similar to a controlled substance in Schedule I or II, but he now believes that he could successfully contest the state's analog evidence.
{¶ 47} At his change of plea hearing Ross testified that when he bought the substances, the company he purchased them from gave him a lab report that showed that the substances were legal. He claimed he had wanted to challenge the state's evidence, but he "was forced to take an attorney that didn't want to fight for me" and "didn't know nothing about the case."[4] The state challenged Ross's testimony, but Ross denied knowing that his attorney reviewed the lab report, shared the report with the state in discovery, and discussed the evidence during plea negotiations. The trial court denied the motion, finding that Ross "was represented by a highly competent attorney" who was one of the county's "finest criminal attorneys." Ross made the motion three years after he entered his plea; he understood the nature of the charges and possible penalties when he entered the plea. The trial court denied the motion finding that "this is a classic change of heart effort * * *."
{¶ 48} A balance of the outlined factors does not warrant withdrawal of Ross's guilty plea. The trial court considered counsel's competency, finding him "highly competent" and one of the county's "finest criminal attorneys." The record shows that Ross was given a full Crim.R. 11 hearing prior to entering his plea and a full hearing on his motion to withdraw-Ross does not contest this. The trial court gave full and fair consideration of the motion, replaying recorded portions of the change of plea hearing for Ross's benefit. We find that the motion was not timely; Ross made it three years after he failed to appear for his sentencing hearing, all the while his whereabouts unknown.
{¶ 49} We also find that reasons set forth in Ross's motion were not supported by and conflicted with his testimony at the hearing. In his motion Ross cites "new evidence" that he obtained after entering his plea. His motion stated, "Due to the new evidence from the independent lab testing, Defendant does not wish to waive his rights to trial as he feels strongly that he is not guilty * * *. When Defendant signed his guilty plea, he was under the mistaken impression that the prosecutor's drug tests results were accurate. It has since been proven that this is not the case." However, at the hearing Ross testified he had the lab results from his supplier when he made his purchases and gave them to his attorney before entering his guilty plea; he claimed that his attorney "just didn't look at it. He didn't take it serious, * * *."
{¶ 50} Ross contends that he "has a complete defense to the charges, and, in fact, a constitutional argument against conviction." However, his "complete defense" and "constitutional argument" are based on the meritless arguments that (1) his *96 acts were not criminalized until December 20, 2012 and (2) the controlled substance analog statute is unconstitutionally vague-arguments we have reviewed and reject.
{¶ 51} Our review of the record reflects that Ross had a change of heart regarding his guilty plea, which is not a reasonable and legitimate basis for withdrawing a plea. Accordingly, the trial court did not act arbitrarily, unreasonably or unconscionably in denying Ross's motion to withdraw his guilty pleas. We overrule Ross's fourth assignment of error.
D. Imposition of Consecutive Sentences
{¶ 52} Ross concedes that the trial court made the findings required by R.C. 2929.14(C) prior to imposing consecutive sentence, but argues those findings are not supported by competent, credible evidence. Ross also contends that several of the offenses are allied offenses of similar import and should have been merged for purposes of sentencing. Specifically, he argues that the indictment includes the statement that Count III (aggravated funding of drug activity) was a predicate event of the pattern of corrupt activity alleged in Count I (engaging in a pattern of corrupt activity) and Count II (conspiracy to engage in a pattern of corrupt activity). As a result, Ross claims Count III should have merged into Counts I and II. However, the record indicates the parties stipulated that Counts I and II do not merge.
{¶ 53} The state argues that Ross's sentence was part of a negotiated plea agreement and is unreviewable under R.C. 2953.08(D)(1), which states, "A sentence imposed upon a defendant is not subject to review under this section if the sentence is authorized by law, has been recommended jointly by the defendant and the prosecution in the case, and is imposed by a sentencing judge." The state also urges us to reject Ross's allied offense argument because it was not raised as a separate assignment of error and because appellate courts review assignments of error, not mere arguments citing Robinette v. Bryant , 4th Dist. Lawrence No. 14CA28, 2015-Ohio-119, ¶ 43, 2015 WL 223007.
{¶ 54} In his reply brief Ross contends that the sentence was not recommended jointly because he did not agree to receive a 30-year prison term if he violated bond conditions.
1. The 30-Year Prison Term is Part of the Negotiated Plea Agreement
{¶ 55} Although the record does not contain a written document, the plea agreement stated on the record in open court in accordance with Crim.R.11(F) :
THE COURT: The record should further reflect it's a negotiated plea, * * * that as long as this Defendant abides by his conditions of bond he'll receive a negotiated ten year prison term. It really doesn't matter how we break it down since nothing is mandatory. So we'd give him ten years on Count I, and on Count 2, which is a felony two, we'll give him the eight years On the felony, Count 3 the ten years, but again, there [sic] all running concurrently for each other, for an aggregate ten year prison term.
Now he's also going to be eligible for judicial release between five to seven years. * * * this Court has made representation that if the Defendant has no disciplinary conduct marks against him while he's in prison and participates in every single program that's offered to him at a good or excellent level of participation, that I would consider a judicial release at the five years. However, if he fails to abide by his conditions of bond in any way that he'd be looking at serving 30 years in prison. * * * And, Mr. Ross, is this your understanding, sir?
*97 DEFENDANT: Yes, sir.
* * *
THE COURT: Okay, All right, it's very important then you abide by your conditions of bond so that you can get your deal and not get a 30 year deal. Okay. * * *
DEFENDANT: Yes, sir.
{¶ 56} Thus, the record shows that the court included the 30-year prison term as part of the negotiated plea agreement and neither trial counsel nor Ross made an objection when it was stated to be part of the agreement.
{¶ 57} Furthermore, the trial court reiterated that the 30-year prison term was part of the negotiation plea agreement at the hearing on Ross's motion to withdraw plea:
THE COURT: * * * [Ross] was told * * * if he did not abide he was going to get 30 years. And he understood it. He did it with a lawyer.
In response Ross's counsel stated that Ross had just informed him that Ross did not know he had agreed to a 30-year prison term if he breached bond. The trial court offered to play back the recording of the change of plea hearing to show that the 30-year prison term was part of the agreement. Later in the hearing the trial court replayed the recording from that portion of the hearing.
{¶ 58} At the sentencing portion of the hearing the trial court again stated that the 30-year prison term was part of the negotiated plea agreement and Ross made no objection:
THE COURT: This sentence, pursuant to Revised Code Section 2953.08(D), is a jointly recommended and agreed sentence that he will serve * * * all running consecutively with each other, for an aggregate 30 year prison term.
{¶ 59} Ross did not object to the trial court's inclusion of the 30-year prison term as part of the negotiated plea agreement at either the change of plea hearing or the sentencing hearing. On appeal Ross has not included an assignment of error contesting the trial court's finding that the 30-year sentence is "a jointly recommended and agreed sentence." Nor has he included it in his statement of issues presented for review. Thus, we find that the 30-year prison term was part of the negotiated plea agreement.[5]
2. The Negotiated Plea Agreement is Not Reviewable
{¶ 60} If the negotiated plea agreement complies with R.C. 2953.08(D)(1), we cannot review Ross's sentence. A felony sentence is not reviewable under R.C. 2953.08(D)(1)"if the sentence is authorized by law, has been recommended jointly by the defendant and the prosecution in the case, and is imposed by a sentencing judge." "[A] sentence is 'authorized by law' and is not appealable within the meaning of R.C. 2953.08(D)(1) only if it comports with all the mandatory *98 sentencing provisions." State v. Underwood , 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 21 (because a court's duty to merge allied counts at sentencing is mandatory, not discretionary, a sentence imposed on multiple allied counts that were not merged is not authorized by law and is reviewable).
{¶ 61} Ross's attack on the negotiated plea agreement is two-pronged: (1) there was insufficient evidence to support the court's consecutive sentence findings under R.C. 2929.14(C) and (2) the court failed to merge allied offenses of similar import prior to sentencing him in violation of R.C. 2941.25
a. Consecutive Sentences
{¶ 62} Recently the Supreme Court of Ohio held that where a jointly recommended sentence includes consecutive sentences, "a trial court is not required to make the consecutive-sentence findings set out in R.C. 2929.14(C)(4)." State v. Sergent , 148 Ohio St.3d 94, 2016-Ohio-2696, 69 N.E.3d 627, ¶ 43 (finding State v. Porterfield , 106 Ohio St.3d 5, 2005-Ohio-3095, 829 N.E.2d 690, ¶ 25 controlling). "[W]here a trial judge imposes such an agreed sentence without making those findings, the sentence is nevertheless 'authorized by law' and not reviewable on appeal pursuant to R.C. 2953.08(D)(1)." Id. ; see also State v. Pulliam , 4th Dist. Scioto No. 14CA3609, 2015-Ohio-759, 2015 WL 914823.
{¶ 63} Because Ross's negotiated plea agreement included the 30-year consecutive sentence, his argument that the court's consecutive sentence findings were not supported by the evidence fails. The trial court was not required to make the findings in the first instance. Sergent at ¶ 43. We reject this prong of Ross's attack on the agreement.
b. Allied Offense Analysis
{¶ 64} Next we turn to Ross's allied offense argument. According to the holdings in Underwood, supra , the negotiated plea agreement in this case is authorized by law and therefore not appealable if the trial court did not violate a mandatory duty to merge allied offenses.
{¶ 65} Ross pleaded guilty to: Count I-engaging in a pattern of corrupt activity in violation of R.C. 2923.32(A)(1), a first-degree felony; Count II-conspiracy to engage in a pattern of corrupt activity in violation of R.C. 2923.01, a second-degree felony; and Count III-aggravated funding of drug activity in violation of R.C. 2925.05(A) /(C)(1), a first-degree felony. Ross did not raise an allied offense objection at trial. Where a defendant is sentenced to a jointly recommended sentence pursuant to a plea agreement and fails to raise the issue at trial, the failure to merge convictions on allied offenses may be reviewed for plain error under Crim. R. 52(B). Underwood , 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, at ¶ 31 ; State v. Merryman , 4th Dist. Athens No. 12CA28, 2013-Ohio-4810, ¶ 48, 2013 WL 5914864.
{¶ 66} Plain error exists when the error is plain or obvious, and affects substantial rights. To rise to the level of plain error, an error must appear on the face of the record. State v. Slagle , 65 Ohio St.3d 597, 605, 605 N.E.2d 916, 925 (1992)
{¶ 67} In Underwood, supra , the Supreme Court of Ohio stated that the parties could stipulate in the plea agreement that the offenses were not allied offenses of similar import thereby subjecting the defendant to more than one conviction and sentence:
[W]e note that nothing in this decision precludes the state and a defendant from stipulating in the plea agreement *99 that the offenses were committed with separate animus, thus subjecting the defendant to more than one conviction and sentence. When the plea agreement is silent on the issue of allied offenses of similar import, however, the trial court is obligated under R.C. 2941.25 to determine whether the offenses are allied, and if they are, to convict the defendant of only one offense. Nevertheless, if a trial court fails to merge allied offenses of similar import, the defendant merely has the right to appeal the sentence.
Underwood at ¶ 29.
{¶ 68} Here the state and Ross stipulated in their plea agreement that Counts I and II do not merge:
MR. APEL [PROSECUTOR]: And one other thing, Your Honor, please, if-just in case there's any question, we've agreed in the pretrial back there that * * * Count 1 Engaging in a Pattern of Corrupt-Corrupt Activities, and Count 2, the Conspiracy, do not merge.
THE COURT: Is that the agreement, Mr. Nash?
MR. NASH [DEFENSE COUNSEL]: Yes, Your Honor.
Therefore, under Underwood , Counts I and II do not merge and Ross was properly separately sentenced on each count. However, the record contains no stipulation concerning Count III-aggravated funding of drug activity in violation of R.C. 2925.05(A) /(C)(1).
{¶ 69} Ross argues that the trial court's imposition of consecutive prison sentences for the RICO offenses and the predicate offense of aggravated funding of drug activity violates the Double Jeopardy Clauses of the United States and Ohio Constitutions. He contends that the offenses were allied offense of similar import and should have been merged for purposes of sentencing under R.C. 2941.25(A).
{¶ 70} The Supreme Court of Ohio has rejected this argument and has held that R.C. 2941.25(A) and the Johnson allied offense test do not apply to RICO offenses and their predicate offenses under R.C. 2923.32(A)(1). Rather, the effect of the RICO statute of providing enhanced sanctions indicated an intent to permit cumulative punishments for RICO offenses and the underlying predicate offenses. See State v. Miranda , 138 Ohio St. 3d 184, 2014-Ohio-451, 5 N.E.3d 603, ¶ 20 ("a RICO offense does not merge with its predicate offenses for purpose of sentencing"). Ross's two RICO offenses-Count I, engaging in a pattern of corrupt activity and Count II, conspiracy to engage in a pattern of corrupt activity do not merge with the predicate offense in Count III, aggravated funding of drug activity. See also Miranda at ¶ 21-26 (Lanzinger, J. concurring). Therefore, Ross can be separately sentenced for each and the jointly recommended sentence agreement is authorized by law.
{¶ 71} In sum, we hold that in the context of a jointly recommended plea and sentencing agreement, the trial court is not required to make the consecutive-sentence findings set out in R.C. 2929.14(C)(4) and therefore does not need to support the findings with sufficient evidence on the record. Additionally, we hold the trial court did not violate the duty to merge allied offenses under R.C. 2941.25 because Ross's RICO offenses do not merge with the predicate drug offense of aggravated funding of drug trafficking. Therefore, the jointly recommended sentence is "authorized by law." Because the sentence is not subject to review under R.C. 2953.08(D)(1), we do not undertake an analysis of Ross's fifth assignment of error. See State v. Rice , 1st Dist. Hamilton No. C-140348, 2015-Ohio-5586, ¶ 17-21, 2015 WL 9693877 (DeWine, J., concurring) (where defendant entered into an agreed sentence that included *100 a two-year prison term if he violated community control, the appellate court should first determine if the sentence is reviewable under R.C. 2953.08(D)(1) before undertaking a review of the assignment of error challenging the agreed upon prison term).
IV. CONCLUSION
{¶ 72} Because his acts of selling and possessing controlled substance analogs were criminalized at the time Ross committed them, we affirm Ross's convictions. Ross's constitutional right to due process of law was not violated because the controlled substance analog statute is not unconstitutionally vague on its face or as applied to him. Ross's ineffective assistance of counsel claim fails because Ross cannot show that the legal challenges he contends should have been raised or stood a reasonable probability of success. Therefore, he has failed to show ineffective assistance. The trial court did not err in refusing to allow him to withdraw his guilty plea where the basis for his request was a change of heart regarding the strength of the state's analog evidence. Finally, Ross's challenges to his sentence are not reviewable because the sentence was jointly recommended, imposed by a sentencing judge, and authorized by law.
JUDGMENT AFFIRMED.
Abele, J. & Hoover, J.: Concur in Judgment and Opinion, with Opinion.
Abele, J., concurring in judgment and opinion with concurring opinion:
{¶ 73} Although I agree with the principal opinion and the sentiment expressed in footnote 5 at page twenty-five, I nevertheless harbor severe reservations in this matter about both the nature of the plea agreement and the corresponding alternative or conditional sentences. It is most unusual for a court to accept a negotiated guilty plea, and then impose two separate penalties-one sentence if the defendant appears to begin serving the sentence and a second, much more severe sentence if the defendant fails to appear to serve the sentence. At first glance, one may reason that this situation is a product of the defendant's own making-and it is. The defendant did indeed agree to this very unusual arrangement, and the failure to appear for court proceedings is an affront to the court and to the administration of justice. Nevertheless, other remedies are available and are designed to be used in this type of situation (e.g. criminal charge for the failure to appear, forfeiture of the amount of cash or property posted as bond and used to secure a defendant's appearance, etc.). Here, an increase of twenty years in prison (defendant agreed to a ten year sentence if he appeared and a thirty year sentence if he failed to appear) bears little or no relation to the severity of the offenses for which the appellant was convicted. Thus, I am extremely wary about the use of a conditional sentence in this case to the point that I would welcome further review of the propriety of such a sentencing scheme.
Hoover, J., concurring in judgment and opinion with lead opinion and with concurring opinion, with opinion:
{¶ 74} I concur in the judgment and opinion of the lead opinion as well as with the concurring opinion. I write separately only to note my concern with the additional twenty years that the trial court added to the ten year sentence for Ross's failure to comply with his bond conditions.
{¶ 75} As Judge Abele aptly states, "[O]ther remedies are available and are designed to be used in this type of situation." Here, Ross could have been charged with a separate offense of failure to appear.
*101 However, even the maximum prison sentence for failing to appear in these circumstances would only have been eighteen months. See R.C. 2929.14(A)(4). If Ross had appeared as he was scheduled, Ross would have been sentenced to a prison term of ten years. Circumstances of the underlying crime never changed between the time that Ross changed his plea to the time that he was actually sentenced; and no new information was learned regarding the circumstances of the crime. Thus, the extra twenty years imposed upon Ross was clearly only for his failure to appear. This twenty years of punishment is highly disproportionate to what the legislature has deemed should be the punishment for a failure to appear. This seems to run afoul of fundamental fairness principles.
{¶ 76} Nonetheless, I do agree that this was an agreed sentence and that we cannot review the merits of it pursuant to R.C. 2953.08(D)(1). I agree that the judgment of the trial court should be affirmed.

The judgment of conviction contains a typographical error: "eighteen (8) years on Count 2 * * *." (OR # 147, p. 3)

H.B. 334 amended R.C. 2925.03(A)(1) to include controlled substance analogs and read, "(A) No person shall knowingly do any of the following: (1) Sell or offer to sell and controlled substance or a controlled substance analog. " (Emphasis added.)

Hamza Shalash was convicted of multiple counts of aggravated trafficking of controlled substance analog and one count of engaging in a pattern of corrupt activity. In his first appeal, he challenged the controlled substance analog statute as unconstitutionally vague. The court rejected his constitutional challenge but remanded on other grounds related to the trial court's failure to hold a Daubert hearing. On his second appeal, Shalash argued the charges should be dismissed because controlled substance analogs were not criminalized at the time he sold them, relying on Smith from the Tenth District. The court rejected his argument, rejected the Smith analysis, affirmed the trial court's judgment, and certified a conflict to the Supreme Court of Ohio. The Supreme Court of Ohio affirmed the Twelfth District's holding and rejected the Tenth District in State v. Shalash , 148 Ohio St.3d 611, 2016-Ohio-8358, 71 N.E.3d 1089, the case we cite in rejecting Ross's first assignment of error.

The record shows that Ross had four different trial attorneys. Two counsel sought to withdraw because Ross would not show up for appointments, return telephone calls, or honor fee agreements. One counsel sought to withdraw because Ross failed to meet with him and had made "misrepresentations and tactics used to trick attorney" into representing him: "Assuming the Defendant's true name is Michel Ross, that would have been the only truth counsel has heard so far."

We are quick to note that the conditions/or alternative sentence imposed here includes a seemingly draconian increase in the period of incarceration if the defendant fails to satisfy the condition necessary for imposition of the lesser sentence. Were it not for the fact that Ross agreed to the terms of the conditional sentence, one might wonder if such a dramatic increase in sanctions would offend the concept of fundamental fairness under substantive due process.
However, in this case even if there was a due process concern, Ross himself invited the error and therefore would be foreclosed from raising it even under a plain error challenge. See State v. Rohrbaugh , 126 Ohio St.3d 421, 2010-Ohio-3286, 934 N.E.2d 920, ¶ 10 (invited error precludes plain error, etc.).
And although one might question counsel's effectiveness in advising a client to accept such a "deal", that issue is not before us either.