[Cite as *State v. Medina*, 2021-Ohio-1727.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                                      :

      Plaintiff-Appellee,                    :

                                        No. 109693

      v.                                            :

JONATHAN MEDINA,                                   :

      Defendant-Appellant.                   :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:**  AFFIRMED
**RELEASED AND JOURNALIZED:**  May 20, 2021

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-19-646338-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Kelly N. Mason, Assistant Prosecuting Attorney, *for appellee.*

Rick L. Ferrara, *for appellant.*

EMANUELLA D. GROVES, J.:

{¶ 1} Defendant-appellant Jonathan Medina ("Medina") appeals his convictions after entering guilty pleas that he now contends were in violation of Crim.R. 11.  For the reasons set forth below, we affirm.

## Procedural and Factual History

{¶ 2} In December 2019, a grand jury indicted Medina[1] on four counts of gross sexual imposition with a sexually violent predator specification attached and four counts of endangering children. The indictments alleged that Medina sexually abused his ten-year-old stepson. In February 2020, pursuant to a plea agreement, Medina pled guilty to all four counts of gross sexual imposition, without the sexually violent predator specification attached, and a single count of endangering children. In accordance with the plea agreement, Medina stipulated that none of the counts were allied offenses.

{¶ 3} In March 2020, the trial court imposed concurrent prison sentences of three years on the four counts of gross sexual imposition. In addition, the trial court imposed a prison sentence of seven and a half to ten and a half years for the count of endangering children. The trial court ordered Medina to serve the prison sentence for endangering children consecutively to the concurrent sentences for gross sexual imposition. Further, the trial court classified Medina as a Tier II sexual offender.

{¶ 4} Medina now appeals, assigning the following two errors for review:

### Assignment of Error No. 1
The trial court erred in accepting appellant's guilty plea without first finding that it complied with Crim.R. 11 to establish that the plea was knowing, intelligent and voluntary.

---

[1] Medina's wife, Ashley Havarcik, was also indicted, subsequently pled guilty to amended charges, and was sentenced to two years of community control. Havarcik is not part of this appeal and will only be discussed tangentially in the first assignment of error.

## Assignment of Error No. 2

The sentencing under Ohio law violated the Separation of Powers Doctrine of the Constitution of the state of Ohio and the United States, Due Process of Law, are void for vagueness and conflict internally with other Ohio law.

## Law and Analysis

{¶ 5} In the first assignment of error, Medina argues the trial court failed to comply with Crim.R. 11 when it accepted his pleas.

{¶ 6} Due process requires that a defendant's plea be made knowingly, intelligently, and voluntarily; otherwise, the defendant's plea is invalid. *State v. Bishop*, 156 Ohio St.3d 156, 2018-Ohio-5132, 124 N.E.3d 766, ¶ 10, citing *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 25; *see also State v. Engle*, 74 Ohio St.3d 525, 527, 1996-Ohio 179, 660 N.E.2d 450. ("When a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily. Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution.").

{¶ 7} The purpose of Crim.R. 11(C) is to provide the defendant with relevant information so that he can make a voluntary and intelligent decision whether to plead guilty. *State v. Ballard*, 66 Ohio St.2d 473, 480, 423 N.E.2d 115 (1981). Before accepting a guilty plea in a felony case, a court must comply with Crim.R. 11(C) and "conduct an oral dialogue with the defendant to determine that the plea is voluntary, and the defendant understands the nature of the charges and the

maximum penalty involved, and to personally inform the defendant of the constitutional guarantees he is waiving by entering a guilty plea." *State v. Martin*, 8th Dist. Cuyahoga Nos. 92600 and 92601, 2010-Ohio-244, ¶ 5.

**{¶ 8}** Recently, in an effort to simplify an appellate courts' analysis of Crim.R. 11(C) issues, the Ohio Supreme Court, in *State v. Dangler*, 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286, reiterated that "[w]hen a criminal defendant seeks to have his conviction reversed on appeal, the traditional rule is that he must establish that an error occurred in the trial-court proceedings and that he was prejudiced by that error." *Id.* at ¶ 13, citing *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 14-15; *Stewart* at 93; Crim.R. 52.

**{¶ 9}** The *Dangler* court continued that it made a limited exception to the prejudice component of that rule in the criminal-plea context. Specifically, when a trial court fails to explain the constitutional rights that a defendant waives by pleading guilty or no contest, we presume that the plea was entered involuntarily and unknowingly, and no showing of prejudice is required. *Dangler* at ¶ 14, citing *Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, at ¶ 31; *Veney* at syllabus.

**{¶ 10}** Further, the *Dangler* court created one additional exception to the prejudice requirement namely: a trial court's complete failure to comply with a portion of Crim.R. 11(C) eliminates the defendant's burden to show prejudice. *Id.* at ¶ 15, citing *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d 1224, ¶ 22.

{¶ 11} Finally, the *Dangler* court underscored that aside from these two exceptions, the traditional rule continues to apply, that is, a defendant is not entitled to have his plea vacated unless he demonstrates he was prejudiced by a failure of the trial court to comply with the provisions of Crim.R. 11(C). *Id.* at ¶ 16, citing *Nero*, 56 Ohio St.3d at 108, 564 N.E.2d 474. The test for prejudice is "whether the plea would have otherwise been made." *Id.*

{¶ 12} Moreover, to aid our analysis, the *Dangler* court also provided a three-question test namely: "(1) has the trial court complied with the relevant provision of [Crim.R. 11]? (2) if the [trial] court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of demonstrating prejudice? and (3) if a showing of prejudice is required, has the defendant met that burden?" *Id.* at ¶ 17.

{¶ 13} We now apply the *Dangler* court's three-question test to the facts in the instant matter.

{¶ 14} Within this assignment of error, Medina argues the trial court failed to ask him whether he understood that he was waiving his right to subpoena witnesses or to elicit a response that signaled an acknowledgement that he was waiving that right.

{¶ 15} In this matter, the trial court held a joint plea hearing and alternatively addressed each defendant, prior to accepting their pleas. The following exchange took place:

THE COURT: [E]ven though your lawyers have already explained your rights to you, I must be satisfied you understand your rights. Do you understand that you're presumed innocent in this case and that by entering a plea of guilty to the amended indictment that you admit to the truth of those facts and your full guilt?

DEFENDANT MEDINA: Yes, Your Honor.

THE COURT: Do you understand that you have a right to a trial, your choice of either a jury trial or to the Court, at which time the State must prove your guilt and that you're giving up that right?

DEFENDANT MEDINA: Yes, Your Honor.

THE COURT: Do you understand that you have the right to confront and cross-examine witnesses the State must bring forth at such a trial and that you're giving up that right?

DEFENDANT MEDINA: Yes, Your Honor.

THE COURT: Do you understand you have the right to subpoena witnesses to testify in your favor at a trial of your case and that you're giving up that right?

DEFENDANT HAVARCIK: Yes.

THE COURT: You don't understand that?

DEFENDANT HAVARCIK: I didn't hear you.

THE COURT: Pardon me?

DEFENDANT HAVARCIK: No.

THE COURT: All right. You have the right to, you know, have witnesses come forward that are -- can testify in your favor. If they don't want to, you know, the Court can issue a process to compel them to come forward and testify on your behalf. That's what that means. I can subpoena people. If they don't comply with the subpoena, I can have sheriffs go out, pick them up, arrest them, bring them back here, force them to testify; understand?

DEFENDANT HAVARCIK: Yes.

THE COURT: You have that right; do you understand?

DEFENDANT HAVARCIK:  Yes, I understand.

THE COURT:  Pardon me?

DEFENDANT HAVARCIK:  Yes, Your Honor.

THE COURT:  All right.  Do you understand you have the right to have the State prove you guilty beyond a reasonable doubt at a trial of your case and that you're giving up that right?

DEFENDANT MEDINA:  Yes, Your Honor.

THE COURT:  Do you understand you have the right to -- not to testify at the time of the trial of your case which no one may use against you and that you're giving up that right?

DEFENDANT MEDINA:  Yes, Your Honor.

Tr. 9-12.

{¶ 16}  A review of the above colloquy and the sentencing transcript reveals that the trial court gave the proper advisements, regarding the constitutional rights enumerated in Crim.R. 11(C)(2)(c), that ensured that Medina understood he was waiving those rights by pleading guilty.  Thus, we can answer the first question in the affirmative.

{¶ 17}  Although the transcript does not contain an affirmative response from Medina on the issue of his right to subpoena witnesses to testify on his behalf, the above excerpt clearly indicates that the trial court tracked the language of Crim.R. 11(C), using words in a reasonably intelligible manner.  Except for this sole instance, Medina repeatedly indicated that he understood the rights he was waiving.

{¶ 18}  Importantly, when the trial court offered further explanation of the right to subpoena witnesses, for Havarcik's benefit, there was no indication that

Medina did not understand. Arguably, Medina could also have benefitted from the trial court's additional explanation on this issue.

{¶ 19} In addition, the record reveals that defense counsel had reviewed the plea offer with Medina, along with his constitutional rights. The record also reveals that both the prosecutor and defense counsel stated that they were satisfied with the trial court's compliance with Crim.R. 11. The record demonstrates that Medina was informed of and understood the nature of the charges, the maximum penalty involved, the effect of his guilty pleas, and the constitutional rights he would waive by pleading guilty.

{¶ 20} As such, the trial court met its duty in carrying out the specific mandate of Crim.R. 11(C)(2)(c). Because the trial court complied with the relevant provision of the rule, we need not engage in any further analysis under the *Dangler* three-question test. *Id.* at ¶ 17.

{¶ 21} Following our review of the record, we find that the trial court complied with Crim.R. 11(C)(2), and that Medina entered his guilty pleas knowingly, intelligently, and voluntarily.

{¶ 22} Accordingly, we overrule the first assignment of error.

{¶ 23} In his second assignment of error, Medina argues the indefinite sentencing scheme established by the Regan Tokes Law[2] is unconstitutional

---

[2] On March 22, 2019, the Ohio legislature enacted the Reagan Tokes Law that changed the terms of felony sentencing for qualifying felonies of the first or second degree. See R.C. 2929.14.

because it violates, among other things, constitutional guarantees of separation of powers and due process.

**{¶ 24}** However, Medina failed to preserve any objection because he did not raise the issue of the constitutionality of the Reagan Tokes Law at his sentencing hearing. "It is well established that 'the question of the constitutionality of a statute must generally be raised at the first opportunity and, in a criminal prosecution, this means in the trial court.'" *State v. Jenkins*, 8th Dist. Cuyahoga No. 109323, 2021-Ohio-123, ¶ 21, citing *State v. Alexander*, 12th Dist. Butler No. CA2019-12-204, 2020-Ohio-3838, ¶ 8, quoting *State v. Buttery*, Slip Opinion No. 2020-Ohio-2998, ¶ 7.

**{¶ 25}** This court has recently declined to address constitutional challenges to the Reagan Tokes Law when defendants did not object to their sentences or otherwise raise the constitutionality of the act at their sentencing hearing. *See State v. White*, 8th Dist. Cuyahoga No. 109652, 2021-Ohio-126, ¶ 9; *State v. Dames*, 8th Dist. Cuyahoga No. 109090, 2020-Ohio-4991, ¶ 12-19; *State v. Hollis*, 8th Dist. Cuyahoga No. 109092, 2020-Ohio-5258, ¶ 47-54; and *State v. Stone*, 8th Dist. Cuyahoga No. 109322, 2020-Ohio-5263, ¶ 6-10. Therefore, we decline to address Medina's constitutional arguments raised for the first time on appeal.

**{¶ 26}** In taking this path, we have acknowledged that we have discretion to review arguments that were not raised in the trial court for plain error. Recently, in *Dames,* we noted:

Even if the appellant failed to object to the constitutionality of the statute at the trial-court level, appellate courts may still review a trial court decision for plain error. *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 16. However, in order to review for plain error "we require a showing that there was an error, that the error was plain or obvious, that but for the error the outcome of the proceeding would have been otherwise, and that reversal must be necessary to correct a manifest miscarriage of justice." Dames did not make any plain error showing for this court to review.

*Id.* at ¶ 14; *see also Hollis* at ¶ 50 ("Furthermore, like Dames, appellant failed to raise a plain error argument in this appeal, and we decline to construct a plain error argument on appellant's behalf."); *Stone* at ¶ 10 ("In addition to failing to raise a constitutional challenge of the Reagan Tokes Law in the trial court, Stone also has not argued plain error in this appeal. Consequently, we decline to address this issue for the first time on appeal."). *Id.*

**{¶ 27}** Accordingly, we overrule the second assignment of error.

**{¶ 28}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
EMANUELLA D. GROVES, JUDGE

MARY J. BOYLE, A.J., and
SEAN C. GALLAGHER, J., CONCUR