[Cite as *State v. Raines*, 2024-Ohio-3236.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
GALLIA COUNTY

| | | |
|---|---|---|
| State of Ohio, | : | Case Nos. 23CA14 |
| | | 23CA15 |
| Plaintiff-Appellee, | : | |
| | | DECISION AND |
| v. | : | JUDGMENT ENTRY |
| James E. Raines, | : | |
| Defendant-Appellant. | : | **RELEASED 8/19/2024** |

_____

APPEARANCES:

Christopher Pagan, Repper-Pagan Law, Ltd., Middletown, Ohio, for appellant.

Jason Holdren, Gallia County Prosecutor, and Isaac Beller, Gallia County Assistant Prosecutor, Gallipolis, Ohio, for appellee.

_____

Hess, J.

{¶1} In consolidated appeals, James E. Raines appeals from judgments of the Gallia County Court of Common Pleas in two cases convicting him, following guilty pleas, of three counts of violating a protection order and one count of arson. Raines presents three assignments of error asserting that: (1) his conviction was unconstitutional because he received ineffective assistance at the plea hearing; (2) his conviction was unconstitutional under due process because his plea was not knowing, intelligent, or voluntary; and (3) the trial court imposed an unlawful sentence. For the reasons which follow, we overrule the assignments of error and affirm the trial court's judgments.

## I. FACTS AND PROCEDURAL HISTORY

{¶2} On February 15, 2023, the Gallia County grand jury indicted Raines in Case No. 23 CR 27 on three counts of violating a protection order ("VPO") in violation of R.C. 2919.27(A)(2), fifth-degree felonies. Each count alleged Raines recklessly violated the terms of a protection order issued pursuant to R.C. 2151.34, 2903.213, or 2903.214. The offenses allegedly occurred on or about December 21, 2022, December 28, 2022, and January 11, 2023. Raines pleaded not guilty. The State filed discovery request responses indicating it gave defense counsel a copy of a protection order file stamped December 21, 2022, and a copy of a DVD-R of Raines' jail calls, but the order and DVD-R were not filed with the responses.

{¶3} On April 13, 2023, the grand jury indicted Raines in Case No. 23 CR 68 on one count of arson in violation of R.C. 2909.03(A)(1) and (D)(2)(b), a fourth-degree felony. The offense allegedly occurred on or about February 24, 2023. The victim of the arson was the mother of the individual protected under the protection order. Raines pleaded not guilty.

{¶4} In May 2023, Raines changed his pleas to guilty in both cases. At the change of plea hearing, the assistant prosecutor explained that the parties had reached a "global resolution" and recited the terms of their agreement.[1] In Case No. 23 CR 27, Raines would plead guilty to the three VPO counts, which would not merge because they happened on different dates. In Case No. 23 CR 68, Raines would plead guilty to the arson count. Raines agreed that costs would be assessed against him. In exchange, the State would dismiss two other cases at sentencing and consider resolved "all charges,

---

[1] The transcript indicates the trial court recited the terms, but this appears to be a typographical error as the statements are preceded by the court's request for the assistant prosecutor to recite them.

even unindicted ones pertaining to [the] two victims." The State also agreed to not oppose a bond reduction to allow Raines to go to the Phoenix Center prior to sentencing and to not make "a specific recommendation as to what the Court should impose at sentencing," though the victims would be able to "speak freely."

{¶5}   The trial court asked defense counsel whether he informed Raines of the elements of the offenses and talked to him about any available defenses. Defense counsel stated that he had. The trial court asked Raines if he acknowledged defense counsel informed and advised him of those things, and Raines said, "Yes." The court asked Raines if he understood the allegations, and Raines said, "Yes." The court asked Raines if he had any questions about the elements of the offenses, and Raines said, "No." Defense counsel and the assistant prosecutor told the court there was a stipulation that there was a factual basis for each element of the charges.  The court asked Raines if he understood defense counsel was stipulating that there were facts the State would be able to rely upon to prove his guilt beyond a reasonable doubt as to each element of the charges.  Raines said, "Yes."  The court asked Raines to explain what he did to violate the law with respect to each count.  With respect to the VPO counts, Raines told the court that he "[m]ade contact," indicated he knew there was a protection order, and acknowledged having a prior conviction for violating a protection order.

{¶6}   Raines executed guilty plea forms in both cases in which he indicated that he understood the nature of the charges and his possible defenses.  While reviewing the form regarding the VPO charges with Raines, the court noted one page said, "I understand the nature of these charges." The court asked, "Is that true?"  Raines said, "Yes." The court said, "And it says I understand the possible defenses I might have, is

that also true." Raines said, "Yes." The court said, "Okay. So I don't know a whole lot about your cases so I have to rely upon [defense counsel] to talk with you about possible defenses. Do you believe that you and [defense counsel] have explored all possible defenses?" Raines said, "Yes."

{¶7} The court found the guilty pleas were knowing, intelligent, and voluntary, accepted them, and found Raines guilty. The court granted Raines' unopposed motion for a bond reduction to enter the Phoenix Center for treatment. The court also ordered a presentence investigation. The report from that investigation indicates Raines has a lengthy criminal history, which includes a 2005 conviction for VPO under R.C. 2919.27.

{¶8} At the sentencing hearing, defense counsel told the court the VPO offenses

> were in the form of uh, phone calls from the jail while Mr. Raines was uh, being held down there as part of a sentence uh, and Mr. Raines admits that each of these was a violation of an active protection order at the time uh, but I'd like to give a little context about the nature of the violations. Uh, Mr. Raines and [the protected person] had a newborn child at the time. Uh, [the protected person's] phone number was blocked from Mr. Raines['] account as he was you know, in jail uh, she was the victim, she had the protection order against him. Uh, [the protected person] called the jail uh, called Mr. Raines and gave an alternate number that was not blocked uh, so that he could call her on an unblocked number. She also initiated uh, video calls to Mr. Raines while he was in the jail. Again, this is not to excuse his behavior, he acknowledges that the protection order prohibits that and he is in violation of the law by doing that uh, but these were not threatening calls. These were not him trying to intimidate her. Um, chasing her down. She reached out to him, he called the number she gave, they talked about their newborn child. They talked about when he got of jail when he would be able to see the child. Uh, they, they discussed plans like that. You know, this is not a case of Mr. Raines stalking, harassing, intimidating someone putting them in fear.

Counsel asked the court to place Raines on community control.

{¶9} In Case No. 23 CR 27, the trial court sentenced Raines to 12 months in prison on each VPO count. In Case No. 23 CR 68, the court sentenced Raines to 18

months in prison on the arson count. The court ordered that the sentences in Case No.

23 CR 27 be served consecutively to each other and the sentence in Case No. 23 CR 68,

for an aggregate prison term of 54 months. The court ordered that Raines receive 77

days of jail-time credit as to only Count One in Case No. 23 CR 27.

{¶10} At the sentencing hearing, the trial court stated:

Under the circumstances with your prior record and the deliberateness of the arson uh, charge I am going to find consecutive sentences are necessary uh, to protect the public from future crime and to punish the offender. Find they are not disproportionate to the seriousness of the conduct or to the danger the offender poses to the public. Um, I also didn't mention but you've got three separate violation of protection order charges in addition to the uh, record that you have concerning uh, violence. Um, so I am going to find that these um, the arson was committed while you were bond [sic] and awaiting trial. I find that at least two of these offenses were part of one or more course of conduct. The harm caused was so great or unusual no single term adequately reflects the seriousness of the conduct. And your history of criminal conduct * * * demonstrates consecutive sentences are necessary to protect the public from future crime.

At the end of the hearing, the court noted that

if a Judge tells you, you cannot contact somebody you have to abide by that. I don't care, you know, we always give you, when we put those on um, they caution that the person who's protected cannot give you permission to violate the order, it's a Judge's order. And so that's where we are on this.

{¶11} In the sentencing entries in both cases, the court found that "consecutive

sentences are necessary to protect the public from future crime and to punish the

offender," that "[c]onsecutive sentences are not disproportionate to the seriousness of the

offender's conduct nor are they disproportionate to the danger the offender poses to the

public," that "these offenses were committed while Defendant was awaiting trial," that "the

Defendant's history of criminal conduct demonstrates the necessity of consecutive

sentences to protect the public from future crime," and that "at least two of these offenses

were part of one or more course of conduct and the harm caused was so great or unusual that no single term adequately reflects the seriousness of the offender's conduct."

## II.  ASSIGNMENTS OF ERROR

{¶12}  Raines presents three assignments of error:

**Assignment of Error No. I**:   Raines' conviction was unconstitutional because he received ineffective assistance * * * at the plea hearing.

**Assignment of Error No. II**:  Raines' conviction was unconstitutional under Due Process because his plea was not knowing, intelligent, nor voluntary.

**Assignment of Error No. III**:  The trial court imposed an unlawful sentence

## III.  JUDICIAL NOTICE

{¶13}  Raines moved us to take judicial notice of documents from the Gallipolis Municipal Court case in which the protection order underlying the charges in Case No. 23 CR 27 was issued, and we granted the motion.  The first document is a printout of docket entries which indicates that the case was filed on December 19, 2022, and the arraignment hearing was scheduled for December 21, 2022.  The docket indicates that on December 21, 2022, the defendant entered a not guilty plea and was served with a "TPO." On January 12, 2023, the defendant pleaded guilty, and the court found the defendant guilty and imposed a sentence.  On January 17, 2023, the sheriff returned the "TPO."  The next document is a complaint with a file stamp of December 19, 2022, which indicates Raines was charged with one count of domestic violence in violation of R.C. 2919.25(C), a fourth-degree misdemeanor.

{¶14}  The next set of documents include a protection order, warnings concerning it, and a notice to the defendant about its existence.  The protection order has a file stamp of December 21, 2022, and indicates it is a domestic violence temporary protection order

("DVTPO") under R.C. 2919.26. The first page of the order includes two lines of text, "*Ex Parte* DVTPO Granted" and "DVTPO Granted," which are each preceded by a box and followed by a space for the insertion of the date. The box in front of "*Ex Parte* DVTPO Granted" is not marked, and no date was inserted after the text. The box in front "DVTPO Granted" is marked, and the date 12/21/2022 was inserted following the text. The first page also includes a finding by the court that "the Defendant was provided with reasonable notice and opportunity to be heard within the time required by Ohio law."

{¶15} The second page states in part: "This matter came before the Court on  12  / 21  / 2022  for an," followed by two options which each have a box in front of them. The box in front of the first option, which states, "Ex Parte DVTPO," is not marked. The box in front of the second option, which states, "DVTPO hearing on Alleged Victim's **Motion for a Domestic Violence Temporary Protection Order**," followed by additional information, is marked. The fourth page includes a line stating, "THIS IS ISSUED ON THE COURT'S ORDER AFTER THE VICTIM'S REQUEST + DOES NOT REQUIRE A WAIVER/CONSENT."

{¶16} The fifth page states, "IT IS SO ORDERED," followed by signature and date lines. There are lines for a magistrate and judge to sign and indicate the date for an "*EX PARTE* DVTPO." These lines are blank. There are also lines for a magistrate and judge to sign and indicate the date for a "DVTPO." The lines for the magistrate are blank. The lines for the judge contain a signature and contain the date "12-21-2022." The page includes a warning that the protected person cannot give the defendant legal permission to change or violate the terms of the order. There is a section for the court to schedule a hearing on the order, which is blank. There is also a place for the defendant to sign and

date to acknowledge service of the protection order. The line for the defendant's signature states, "REFUSED TO SIGN," and the date line states, "12-21-2022." The bottom of the page has a waiver of hearing section in which the defendant can waive the right to a hearing on a motion for a domestic violence temporary protection order and agree to be bound by the terms of the protection order. This section includes lines for the defendant's signature and date. The signature line states, "N/A – ISSUED BY COURT – 12/21/2022," and the date line appears to contain the judge's signature.

{¶17} The notice about the existence of the order indicates that on December 21, 2022, an officer notified Raines of the protection order, and he refused to sign an acknowledgment of notice. The warnings concerning the order include this statement:

> Only the Court may change the terms of this Protection Order. The Petitioner/Alleged Victim/Protected Person cannot give you legal permission to change this Order. * * * Only the Court may change or end this Protection Order. Unless the Court changes or ends this Order, you may be arrested for violating this Protection Order. **YOU ACT AT YOUR OWN RISK IF YOU DISREGARD THIS WARNING**.

{¶18} The next document indicates that on January 12, 2023, Raines entered a guilty plea, and the court found him guilty and sentenced him. The final document is a letter from the deputy clerk to the sheriff's department requesting the return of the temporary protection order as the case "has been disposed."

## IV. MOTION TO SUPPLEMENT

{¶19} In his reply to the State's response to his motion for judicial notice, Raines moved us to supplement the record with the transcripts from the municipal court proceedings. We did not specifically resolve this motion when we granted the motion for judicial notice. However, "[a] reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the

basis of the new matter." *State v. Ishmail*, 54 Ohio St.2d 402 (1978), paragraph one of the syllabus. Therefore, we deny the motion to supplement.

## V. FIRST ASSIGNMENT OF ERROR

{¶20} In the first assignment of error, Raines contends that his "conviction was unconstitutional because he received ineffective assistance * * * at the plea hearing." He asserts that "[f]or reasonable performance, trial counsel must understand the factual basis for a charge" and "know the available defenses." Raines claims his "[t]rial counsel failed to know 2 critical features" of his case—"he was indicted under the wrong VPO division; and, if properly charged, he had a complete defense." He asserts the municipal court issued a DVTPO under R.C. 2919.26 on the protected person's oral request. Raines claims he was later indicted under R.C. 2919.27(A)(2) for violating the DVTPO by calling the protected person three times at her request, but that provision "does not criminalize violating a DVTPO."

{¶21} Raines acknowledges R.C. 2919.27(A)(1) criminalizes violating a DVTPO but asserts that even if he had been charged under that provision, "he had a complete defense." Raines does not dispute that he violated the DVTPO on three occasions. Instead, he claims "the municipal court failed to hold a hearing on the DVTPO under R.C. 2919.26(D) to comply with Due Process," rendering the DVTPO "invalid" under *State v. Finley*, 2001-Ohio-4347 (1st Dist. 2001). Raines asserts that he "was prejudiced by trial counsel's deficient performance" because he "had defenses" and "there was no plea bargain where [he] waived his defenses for a better result. Instead, he pleaded to the VPO indictment as charged." He claims that "[w]ith reasonable advice, there is a

reasonable probability [he] would have rejected his plea to the indictment and proceeded to trial on his complete defenses."

A.  Legal Principles

**{¶22}** "The Sixth Amendment to the United States Constitution, and Article I, Section 10 of the Ohio Constitution, provide that defendants in all criminal proceedings shall have the assistance of counsel for their defense."  *State v. Howard*, 2024-Ohio-1409, ¶ 48 (4th Dist.).  The United States Supreme Court "has recognized that 'the right to counsel is the right to the effective assistance of counsel.' "  *Strickland v. Washington*, 466 U.S. 668, 686 (1984), quoting *McMann v. Richardson*, 397 U.S. 759, 771, fn. 14 (1970).  "Upon direct appeal, appellate courts generally review claims of ineffective assistance of counsel on a de novo basis, simply because the issue originates at the appellate level; no trial court has ruled on the issue.  Appellate courts review the trial record and are left to judge from the bare record whether the assistance was effective."  *State v. Gondor*, 2006-Ohio-6679, ¶ 53.

**{¶23}** "[A] guilty plea generally waives a defendant's right to claim that counsel's ineffectiveness prejudiced the defendant, except to the extent that the ineffective assistance of counsel caused the defendant's plea to be less than knowing, intelligent, and voluntary."  *State v. Bell*, 2024-Ohio-1502, ¶ 11 (4th Dist.), citing *State v. Williams*, 2014-Ohio-3415, ¶ 11-12 (8th Dist.), citing *State v. Spates*, 64 Ohio St.3d 269, 272 (1992), citing *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).  "[T]he two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel."  *Hill v. Lockhart,* 474 U.S. 52, 58 (1985).  Under *Strickland*, the defendant must show that (1) counsel's performance was deficient, i.e., counsel's representation fell

below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced the defense, i.e., there is a reasonable probability that but for counsel's errors, the proceeding's result would have been different. *Strickland* at 687-688, 694. "[W]hen a defendant claims that his counsel's deficient performance deprived him of a trial by causing him to accept a plea, the defendant can show prejudice by demonstrating a 'reasonable probability that, but for counsel's errors, he [or she] would not have pleaded guilty and would have insisted on going to trial.' " *Lee v. United States*, 582 U.S. 357, 364-365 (2017), quoting *Hill* at 59. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* at 694.

### B. Was Raines Charged Under the Correct Provision?

**{¶24}** Raines was not charged under the correct Revised Code provision in Case No. 23 CR 27. R.C. 2919.27(A) states:

No person shall recklessly violate the terms of any of the following:

(1) A protection order issued or consent agreement approved pursuant to section 2919.26 or 3113.31 of the Revised Code;

(2) A protection order issued pursuant to section 2151.34, 2903.213, or 2903.214 of the Revised Code;

* * *

Raines was indicted on three VPO counts under R.C. 2919.27(A)(2), which only applies to protection orders issued pursuant to R.C. 2151.34, 2903.213, or 2903.214. However, the municipal court issued the DVTPO which formed the basis for the charges under R.C. 2919.26. Therefore, Raines should have been charged with three VPO counts under R.C. 2919.27(A)(1), not R.C. 2919.27(A)(2).

**{¶25}** The State concedes that Raines was "indicted under the wrong charging theory" but then suggests it is significant that the indictment referenced R.C. 2903.213. R.C. 2903.213 governs the issuance of a protection order as a condition of pretrial release when the defendant is charged with a specified offense, unless it "involves a person who is a family or household member as defined in section 2919.25 of the Revised Code." R.C. 2903.213(A). The State highlights the fact that R.C. 2903.213(A) states, "If the complaint or indictment involves a person who is a family or household member, the complainant, the alleged victim, or the family or household member may file a motion for a temporary protection order pursuant to section 2919.26 of the Revised Code." Based on this language, the State asserts that "the protection order issued against [Raines] under [R.C.] 2919.26 stemmed from [R.C.] 2903.213(A) * * * ."

**{¶26}** The DVTPO did not "stem from" R.C. 2903.213(A). R.C. 2903.213 does not apply to complaints alleging domestic violence in violation of R.C. 2919.25, like the one filed against Raines in the municipal court. R.C. 2903.213 specifically excludes from its provisions complaints or indictments involving family or household members as defined in R.C. 2919.25. An essential element of domestic violence is the victim's status as a family or household member. R.C. 2919.25(A)-(C). The fact that R.C. 2903.213(A) cross-references R.C. 2919.26 to aid readers in locating a provision under which family or household members can seek a temporary protection order does not somehow turn a temporary protection order issued under R.C. 2919.26 into one that "stems from" or was issued pursuant to R.C. 2903.213.

C. Does Raines have a Complete Defense under the Correct Provision?

**{¶27}** Raines has not shown that he has a complete defense under the correct Revised Code provision. At the time the municipal court issued the DVTPO, R.C. 2919.26(A)(1) (effective April 8, 2019), stated:

> Upon the filing of a complaint that alleges * * * any offense of violence if the alleged victim of the offense was a family or household member at the time of the commission of the offense, * * * the alleged victim, * * * may file, * * * a motion that requests the issuance of a temporary protection order as a pretrial condition of release of the alleged offender * * *. The motion shall be filed with the clerk of the court that has jurisdiction of the case at any time after the filing of the complaint.

R.C. 2919.26(C)(1) stated: "As soon as possible after the filing of a motion that requests the issuance of a temporary protection order, but not later than twenty-four hours after the filing of the motion, the court shall conduct a hearing to determine whether to issue the order." R.C. 2919.26(C)(1). Alternatively, under R.C. 2919.26(D)(1), the court could "upon its own motion," "issue a temporary protection order as a pretrial condition of release" if it found "that the safety and protection of the * * * alleged victim, * * * may be impaired by the continued presence of the alleged offender." R.C. 2919.26(D)(2) provided that if the court issued "a temporary protection order under this section as an ex parte order," it had to "conduct, as soon as possible after the issuance of the order, a hearing in the presence of the alleged offender," under the standards set forth in R.C. 2919.26(C), "not later than the next day on which the court is scheduled to conduct business after the day on which the alleged offender was arrested or at the time of the appearance of the alleged offender pursuant to summons to determine whether the order should remain in effect, be modified, or be revoked."[2]

---

[2] The current versions of the quoted provisions in R.C. 2919.26 are the same or similar to those in effect when the municipal court issued the DVTPO at issue.

{¶28} Raines suggests that because the protected person made an oral, rather than a written motion for a protection order, we should treat the DVTPO as being issued by the trial court on its own motion under R.C. 2919.26(D)(1). He suggests the court issued the order ex parte, so it had to then conduct a hearing under R.C. 2919.26(D)(2). He claims the court did not do so, so the DVTPO is invalid under *Finley*.

{¶29} In *Finley*, the defendant was charged with VPO under R.C. 2919.27. *Finley*, 2001-Ohio-4347, at ¶ 1 (1st Dist.). "The order had been granted without a hearing as a condition of pretrial release in a previous criminal prosecution against [the defendant] for domestic violence." *Id*. The trial court dismissed the VPO charge, holding the temporary protection order was ineffective because the State failed to establish it was issued in compliance with the due-process requirements of R.C. 2919.26. *Id*.

{¶30} The First District Court of Appeals affirmed. *Id.* at ¶ 5. The appellate court rejected the State's contention that a defendant may not voluntarily disregard a court order unless a court has held that the order is invalid. *Id.* at ¶ 2-3. The appellate court also rejected the State's contention that the protection order had been issued pursuant to R.C. 2919.26(D)(1) and therefore did not invoke the procedural protections of R.C. 2919.26(C). *Id.* at ¶ 4. The court explained that R.C. 2919.26(D)(2) requires that "if the court issues the order ex parte, it shall conduct a hearing in the presence of the alleged offender within a certain amount of time and that the hearing shall be conducted under the standards set forth under R.C. 2919.26(C)." *Id.* Because the defendant "never received a hearing as required by R.C. 2919.26(D)," "the temporary protection order was therefore ineffective," and "no rational trier of fact could have concluded that he had recklessly violated a protection order issued pursuant to that statute." *Id.* at ¶ 5.

{¶31} The State asserts that "there is substantial case law disagreeing with the logic behind the holding in *Finley*;" however, we need not express any opinion on *Finley*. Even if we found it persuasive, Raines still has not shown that he has a complete defense under R.C. 2919.27(A)(1) because he has not shown that the municipal court granted the DVTPO without a hearing. The DVTPO itself indicates that the municipal court did not issue the order ex parte but rather issued it after a hearing. On the first page of the DVTPO, the municipal court had the option to indicate whether it was issuing an ex parte order. The court indicated that on December 21, 2022, it granted a "DVTPO," not an "*Ex Parte* DVTPO." The court also specifically found that "the Defendant was provided with reasonable notice and opportunity to be heard within the time required by Ohio law." The DVTPO had a place where the court could indicate when and how the matter came before it. The court indicated that on December 21, 2022, the matter came before it for a "DVTPO hearing" on the alleged victim's motion, not as an "Ex Parte DVTPO." The judge also signed and dated the lines on the fifth page of the order related to the issuance of a "DVTPO," not an "EX PARTE DVTPO."

{¶32} Raines suggests the municipal court docket proves the trial court did not conduct a hearing. It is true that the docket does not indicate that the trial court scheduled a protection order hearing for December 21, 2022. However, the docket indicates that the arraignment hearing was scheduled for that date, and on that date, Raines entered a not guilty plea and was served with the protection order. The protection order indicates that the victim moved for a protection order and that the court conducted a hearing on the motion on December 21, 2022. These facts suggest the protected person requested a

protection order at the arraignment hearing, and the court conducted a hearing on the request at that time.

**{¶33}** In one of his appellate filings, Raines asserts the DVTPO was "marked to show" no hearing occurred because of the language in it indicating it was issued on the court's order after the victim's request, that the order does not require a waiver or consent, and the notation in the signature line in the waiver of hearing section stating, "N/A – ISSUED BY COURT – 12/21/2022." We disagree. The fact that the municipal court issued the order on the request of the victim does not prove the court did not conduct a hearing. Moreover, it is evident from the DVTPO that the reason the municipal court did not need Raines to waive his right to a hearing and consent to the DVTPO is because the court issued the DVTPO after a hearing, making a waiver and consent by Raines unnecessary. For these reasons, Raines' contention that he would have a complete defense if charged under R.C. 2919.27(A)(1) is not well-taken.

### D. Has Raines Demonstrated Ineffective Assistance of Counsel?

**{¶34}** Raines' ineffective-assistance claim is based on defense counsel's failure to know and advise Raines that he was indicted under the wrong provision of the VPO statute and that if properly charged, he had a complete defense. As explained above, Raines was indicted under the wrong provision of the VPO statute, but Raines has not shown that he would have a complete defense if charged under the correct provision. Moreover, the record does not include Raines' private communications with defense counsel. Although Raines told the trial court that defense counsel talked to him about any defenses that might be available to him, Raines suggests that we can nonetheless

infer from the record that defense counsel did not know or advise him that he had a defense to the R.C. 2919.27(A)(2) charges.

{¶35} But even if we presume that counsel was deficient for failing to know and advise Raines of the fact that he had been incorrectly charged under R.C. 2919.27(A)(2), Raines has not shown prejudice. If Raines had insisted on going to trial on the R.C. 2919.27(A)(2) charges, he had a defense to them because that provision does not criminalize the violation of a protection order issued under R.C. 2919.26. However, Raines does not assert that an acquittal on the R.C. 2919.27(A)(2) charges would have precluded the State from prosecuting him under R.C. 2919.27(A)(1). And as explained above, Raines has not shown that he had a complete defense to charges under R.C. 2919.27(A)(1). Moreover, Raines does not assert that being convicted under R.C. 2919.27(A)(2) instead of R.C. 2919.27(A)(1) has any impact on him. The name of the offense is the same for a violation of either provision—"violating a protection order." R.C. 2919.27(B)(1). Both offenses are fifth-degree felonies for someone such as Raines who has a prior conviction under R.C. 2919.27. R.C. 2919.27(B)(3)(c). And contrary to what Raines suggests, he benefitted from pleading guilty to the R.C. 2919.27(A)(2) charges. In exchange for his guilty pleas in Case Nos. 23 CR 27 and 23 CR 68, two of Raines' other cases were dismissed at sentencing, and the State considered resolved "all charges, even unindicted ones pertaining to [the] two victims." The State also did not oppose a bond reduction to allow Raines to go to the Phoenix Center prior to sentencing, and the State did not make a specific sentencing recommendation to the trial court.

{¶36} Raines has not shown that there is a reasonable probability that, but for counsel's deficient performance, he would not have pled guilty to the VPO offenses and

would have insisted on going to trial. Therefore, he has not shown that he received ineffective assistance. We overrule the first assignment of error.

## VI. SECOND ASSIGNMENT OF ERROR

{¶37} In the second assignment of error, Raines contends that his "conviction was unconstitutional under Due Process because his plea was not knowing, intelligent, nor voluntary." Raines maintains that a plea is not knowing, intelligent, and voluntary when it is based on an erroneous understanding of the applicable law. Raines claims he "was made to believe by the authorities that he was culpable for 3 violations of R.C. 2919.27(A)(2)." He asserts that the grand jury and prosecutor "made that allegation and persisted with it throughout the case." Raines claims his "trial counsel confirmed his culpability at the plea and sentencing hearings" and "told the court that [he] understood he had violated a valid protection order by speaking with [the protected person] on the phone from jail, at [her] request, to discuss their newborn." Thus, he asserts that "the totality of the circumstances show that [he] believed he faced criminal liability under [R.C. 2919.27(A)(2)] for violating a valid DVTPO," and "[t]his belief informed his decision to plea as charged to the VPO indictment." Raines claims his "beliefs about his VPO liability were erroneous," and he "had complete defenses," "[s]o his plea was unconstitutional and cannot be enforced."

{¶38} In his reply brief, Raines asserts that he was just "alerted to a binding U.S. Supreme Court case," *Bousley v. United States*, 523 U.S. 614 (1998), which stands for the proposition that a defendant does not enter a knowing and voluntary guilty plea when the defendant, defense counsel, and the trial court did not correctly understand the essential elements of the crime at the plea hearing. Raines maintains that he "raised a

knowing-and-voluntary claim in his brief." He asserts that the grand jury, prosecutor, defense counsel, and trial court "all mistakenly believed that a violation of a misdemeanor [DVTPO] stated an offense under R.C. 2919.27(A)(2)." He maintains that "[t]here is now no dispute it does not," and "[u]nder *Bousley*, this shows a Due Process violation because [his] plea was not entered knowingly and voluntarily." Raines also asserts public policy favors reversal because "[t]he public must have confidence in the validity of pleas, felony convictions, and prison sentences," and "[t]hat is lost when there is no dispute about a defendant's legal innocence to the charged offenses for which he is imprisoned."

### A. Legal Principles

**{¶39}** " 'Due process requires that a defendant's plea be made knowingly, intelligently, and voluntarily; otherwise, the defendant's plea is invalid.' " *Bell*, 2024-Ohio-1502, at ¶ 10 (4th Dist.), quoting *State v. Medina*, 2021-Ohio-1727, ¶ 6 (8th Dist.). "In general, when deciding whether to accept a plea a court must determine whether a defendant enters the plea knowingly, intelligently, and voluntarily." *Id.* at ¶ 21, citing *State v. McDaniel*, 2010-Ohio-5215, ¶ 8 (4th Dist.). " ' "In considering whether a guilty plea was entered knowingly, intelligently and voluntarily, an appellate court examines the totality of the circumstances through a de novo review of the record to ensure that the trial court complied with constitutional and procedural safeguards." ' " *Id.*, quoting *McDaniel* at ¶ 8, quoting *State v. Eckler*, 2009-Ohio-7064, ¶ 48 (4th Dist.) (lead opinion).

**{¶40}** " 'Before accepting a guilty plea, the trial court should engage in a dialogue with the defendant as described in Crim.R. 11(C).' " *Id.* at ¶ 22, quoting *McDaniel* at ¶ 8. "The underlying purpose, from the defendant's perspective, of Crim.R. 11(C) is to convey to the defendant certain information so that he [or she] can make a voluntary and

intelligent decision whether to plead guilty." *State v. Ballard*, 66 Ohio St.2d 473, 479-480 (1981). "[A]lthough literal compliance with Crim.R. 11(C) is preferred, it is not required." *State v. Stepp*, 2024-Ohio-914, ¶ 13 (4th Dist.), citing *State v. Clark*, 2008-Ohio-3748, ¶ 29, citing *State v. Griggs*, 2004-Ohio-4415, ¶ 19. "Therefore, an appellate court will ordinarily affirm a trial court's acceptance of a guilty plea if the record reveals that the trial court engaged in a meaningful dialogue with the defendant and explained 'in a manner reasonably intelligible to that defendant' the consequences of pleading guilty." *Id.*, citing *Ballard* at paragraph two of the syllabus.

{¶41} Crim.R. 11(C)(2) states:

In felony cases the court * * * shall not accept a plea of guilty * * * without first addressing the defendant personally * * * and doing all of the following:

(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty * * *, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶42} "When a criminal defendant seeks to have [a] conviction reversed on appeal, the traditional rule is that [the defendant] must establish that an error occurred in the trial-court proceedings and that he [or she] was prejudiced by that error." *State v. Dangler*, 2020-Ohio-2765, ¶ 13. However, there are exceptions to the prejudice component of the rule in the criminal-plea context. *Id.* at ¶ 14-15. When a trial court fails

to explain the constitutional rights set forth in Crim.R. 11(C)(2)(c) that a defendant waives by pleading guilty or no contest, "we presume that the plea was entered involuntarily and unknowingly, and no showing of prejudice is required." *Id.* at ¶ 14. In addition, "a trial court's *complete* failure to comply with a portion of Crim.R. 11(C) eliminates the defendant's burden to show prejudice." (Emphasis sic.) *Id.* at ¶ 15. "If neither of these two exceptions apply, then the defendant is not entitled to have the plea vacated without demonstrating prejudice." *State v. Pierce*, 2024-Ohio-82, ¶ 13 (4th Dist.). "The test for prejudice is ' "whether the plea would have otherwise been made." ' " *Pierce* at ¶ 13, quoting *Dangler* at ¶ 16, quoting *State v. Nero*, 56 Ohio St.3d 106, 108 (1990).

**{¶43}** "Properly understood, the questions to be answered are simply: (1) has the trial court complied with the relevant provision of the rule? (2) if the court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of demonstrating prejudice? and (3) if a showing of prejudice is required, has the defendant met that burden?" *Dangler* at ¶ 17.

### B. Analysis

**{¶44}** In his appellate briefs, Raines does not specifically contend that the trial court failed to comply with Crim.R. 11(C). However, one might glean a contention that the court failed to comply with Crim.R. 11(C)(2)(a)'s requirement that the court determine that the defendant is making the plea with understanding of the nature of the charges from Raines' reliance on *Bousley* in his reply brief. In that case, the petitioner asserted his plea was unintelligent because he was misinformed as to the true nature of the charge. *Bousley*, 523 U.S. at 618-619. The United States Supreme Court explained that it has "long held that a plea does not qualify as intelligent unless a criminal defendant first

receives 'real notice of the true nature of the charge against [the defendant], the first and most universally recognized requirement of due process.' " *Id.* at 618, quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941). The Court noted there was a presumption the petitioner was informed of the nature of the charge against him because he was provided with a copy of his indictment prior to pleading guilty. *Id.* However, the petitioner maintained that "his guilty plea was unintelligent because the District Court subsequently misinformed him as to the elements of [the] offense." *Id.* In other words, he contended "that the record reveals that neither he, nor his counsel, nor the court correctly understood the essential elements of the crime with which he was charged." *Id.* The Court stated, "[w]ere this contention proved, petitioner's plea would be * * * constitutionally invalid." *Id.* at 618-619.

{¶45} Even if Raines' reply brief challenges the trial court's compliance with Crim.R. 11(2)(C)(a), we observe that "[t]he purpose of a reply brief is to afford the appellant an opportunity to respond to the appellee's brief, not to raise an issue for the first time. *State v. Ross*, 2017-Ohio-9400, ¶ 17 (4th Dist.). " 'Appellate courts generally will not consider a new issue presented for the first time in a reply brief.' " *Id.*, quoting *State v. Spaulding*, 2016-Ohio-8126, ¶ 179. In any event, any contention that the trial court failed to comply with Crim.R. 11(C)(2)(a) is meritless.

{¶46} "In determining whether a defendant understood the charge, a court should examine the totality of the circumstances." *State v. Fitzpatrick*, 2004-Ohio-3167, ¶ 56. "However, '[t]he courts of this state have generally held that a detailed recitation of the elements of the charge is not required under Crim.R. 11(C)(2)(a)." *Id.* at ¶ 57, quoting *State v. Swift*, 86 Ohio App.3d 407, 412 (11th Dist. 1993). "Moreover, the Constitution

does not require that a trial court explain the elements of the charge, at least where the record contains a representation by defense counsel that the nature of the offense has been explained to the accused." *Id.*

**{¶47}** In this case, the totality of the circumstances demonstrate that Raines understood the nature of the VPO charges. The record reflects that Raines received a copy of the VPO indictment prior to pleading guilty. At the change of plea hearing, the court asked defense counsel whether he had informed Raines of the elements of the offenses, defense counsel stated he had, and Raines agreed. The court asked if Raines understood the allegations, and Raines said that he did. The court asked if he had any questions regarding the elements of the offenses, and Raines said, "No." Later, while reviewing the guilty plea forms with Raines, the court asked whether it was true that he understood the nature of the charges, and Raines said, "Yes." Unlike the petitioner in *Bousley*, Raines does not allege that the trial court misinformed him of the elements of the offenses, nor does our review of the record reflect that the court did so. In addition, we note the record reflects that the trial court complied with the other requirements of Crim.R. 11(C)(2).

**{¶48}** Raines may not have understood that he had a defense to the VPO charges under R.C. 2919.27(A)(2) because the relevant protection order was issued pursuant to R.C. 2919.26, not R.C. 2151.34, 2903.213, or 2903.214. But "[i]t is well-settled that there is no requirement under Crim.R. 11(C)(2) that trial courts apprise defendants of available defenses when accepting a change of plea." *State v. Phillips*, 2012-Ohio-5950, ¶ 31 (3d Dist.). And to the extent Raines implies his plea was not knowing, voluntary, or intelligent due to defense counsel's ineffectiveness, as previously explained, Raines has not

demonstrated a reasonable probability that but for counsel's alleged errors, he would not have pleaded guilty and would have insisted on going to trial.

{¶49} For the foregoing reasons, we conclude that Raines knowingly, voluntarily, and intelligently entered his guilty pleas to the VPO offenses, and we overrule the second assignment of error.

## VII. THIRD ASSIGNMENT OF ERROR

{¶50} In the third assignment of error, Raines contends that the trial court imposed an unlawful sentence when it imposed consecutive sentences for the VPO offenses and applied jail-time credit to a single prison term instead of the aggregate sentence.

### A. Consecutive Sentences

{¶51} Raines contends the trial court imposed an unlawful sentence when it imposed consecutive sentences for the VPO offenses. Raines asserts the trial court "ignored the seriousness of the 3 VPO offenses in its proportionality analysis." Raines maintains that "[t]he seriousness element directs the trial court to the defendant's conduct around the substantive offenses," that "[i]n most cases, seriousness for consecutive sentences is shown by violence and physical harm," and that "[o]ffenses without violence and physical harm are less serious, making consecutive sentences for those offenses disproportionate to their seriousness." Raines asserts that the court "observed that [he] had a prior record for violence, acted deliberately in the Arson, violated the DVTPO 3 times, and that the Arson victim was the mother of the VPO victim. That was it." He claims the court "ignored [his] conduct around the 3 VPO offenses for seriousness and proportionality" and that his conduct was not threatening or violent. Raines contends that he "made 3 calls to [the protected person] while incarcerated to discuss their newborn at

[her] invitation," and that "[t]he trial court needed to engage these facts for a lawful analysis." The court "never did," so the "consecutive-sentencing analysis was contrary to law."

{¶52} Raines also asserts that "[b]y clear and convincing evidence, the record fails to show that consecutive VPO sentences were proportionate to the seriousness of [his] conduct around the VPO offenses." He maintains that a VPO offense "is most serious when a defendant makes unwanted contact with the protected party and acts with violence. That is missing here." Raines asserts that "[t]he contacts were by phone and jail video—not in person," that they were non-threatening, that the protected person "consented to the contacts and even facilitated them by providing an unblocked number and using jail video," and that "the contacts were for a reasonable purpose—to care for the newborn." Therefore, he asserts that "the record shows that the VPO conduct was clearly not serious," and characterizing it as such "is demeaning to VPO cases where a victim is targeted by a defendant with self-serving desires and acts with threats or violence." He asserts that the trial court "never addressed or engaged the VPO conduct in its pronouncement." Instead, the court used his "violent record, the deliberateness of his Arson conduct, and the number of VPO offenses to justify consecutive VPO sentences." But his "past violence and extensive record is probative of other consecutive-sentencing factors that [he] does not challenge," and he "does not challenge his Arson conduct and the consecutive sentence imposed for it."

1. Standard of Review

{¶53} "R.C. 2953.08(G) instructs appellate courts reviewing the imposition of consecutive sentences * * *." *State v. Jones*, 2024-Ohio-1083, ¶ 12 ("*Jones*"). R.C. 2953.08(G)(2) states:

> The court hearing an appeal under [R.C. 2953.08(A), (B), or (C)] shall review the record, including the findings underlying the sentence or modification given by the sentencing court.
>
> The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
>
> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
>
> (b) That the sentence is otherwise contrary to law.

"R.C. 2953.08(F) requires an appellate court to review the entire trial-court record, including any oral or written statements made to or by the trial court at the sentencing hearing, and any presentence, psychiatric, or other investigative report that was submitted to the court in writing before the sentence was imposed. R.C. 2953.08(F)(1) through (4)." *Jones* at ¶ 12.

{¶54} "R.C. 2953.08(G) permits an appellate court to increase, reduce, otherwise modify, or vacate a sentence only 'if it clearly and convincingly finds' that the record does not support the sentencing court's findings or that the sentence is otherwise contrary to law." *Id.* at ¶ 13, citing R.C. 2953.08(G)(2), and *State v. Marcum*, 2016-Ohio-1002, ¶ 22. "The standard to be applied is the standard set forth in the statute: an appellate court has

the authority to increase, reduce, otherwise modify, or vacate a sentence only after it has reviewed the entire trial-court record and 'clearly and convincingly f[ound] either * * * [t]hat the record does not support the sentencing court's findings under [certain statutes]' or '[t]hat the sentence is otherwise contrary to law,' R.C. 2953.08(G)(2)." (Bracketed text in original.) *Id.*

**{¶55}** Raines did not object to the imposition of consecutive sentences at the sentencing hearing and has therefore forfeited all but plain-error review. *State v. Whitaker*, 2022-Ohio-2840, ¶ 166, 171 (defendant who failed to object to imposition of consecutive sentences at sentencing hearing forfeited all but plain-error review as to contention that when a defendant receives a death sentence, the trial court errs by imposing consecutive sentences for noncapital counts because a finding that such sentences are necessary to protect the public from future crimes is nonsensical and violates R.C. 2929.14(C)(4)). A party asserting plain error must demonstrate that an obvious error occurred and that there is a reasonable probability it resulted in prejudice, meaning it affected the outcome of the proceeding. *See State v. Knuff*, 2024-Ohio-902, ¶ 117. " 'It is well settled that a sentence that is contrary to law is plain error and an appellate court may review it for plain error.' " *State v. Price*, 2024-Ohio-1641, ¶ 7 (4th Dist.), quoting *State v. Burrell*, 2024-Ohio-638, ¶ 14 (11th Dist.).

### 2. R.C. 2929.14(C)(4)

**{¶56}** R.C. 2929.14(C)(4) states:

> If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness

of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶57} "Though 'a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, * * * it has no obligation to state reasons to support its findings.' " *Jones*, 2024-Ohio-1083, at ¶ 11, quoting *State v. Bonnell*, 2014-Ohio-3177, ¶ 37. " 'Nor is it required to give a talismanic incantation of the words of the statute, provided that the necessary findings can be found in the record and are incorporated into the sentencing entry.' " *Id.*, quoting *Bonnell* at ¶ 37.

### 3. Analysis

{¶58} Raines does not argue plain error, and even if he had, he has not shown that the trial court erred, let alone plainly erred, when it imposed consecutive sentences for the VPO offenses. We do not clearly and convincingly find that the imposition of consecutive sentences for the VPO offenses is contrary to law. The trial court made the requisite findings at the sentencing hearing and in the VPO sentencing entry. The contention that the trial court had to "engage" the specific facts Raines has identified on

appeal "for a lawful analysis" is meritless.  The court " 'has no obligation to state reasons to support its findings.' "  *Jones* at ¶ 11, quoting *Bonnell* at ¶ 37.

{¶59}  We also do not clearly and convincingly find that the trial court's finding that consecutive sentences are not disproportionate to the seriousness of Raines' conduct is unsupported by the record.  Although threats, violence, and physical harm are certainly relevant to the seriousness of an offense, there is no bright-line requirement in R.C. 2929.14(C)(4) that one of those factors be present for the imposition of consecutive sentences.  Even if the specific communications which prompted the VPO charges were just as described by defense counsel at the sentencing hearing, Raines demonstrated a flagrant disregard for the authority of the municipal court by violating the DVTPO 3 times in 22 days.  Raines claims "the contacts were for a reasonable purpose—to care for the newborn," but it is not clear what care Raines could provide the child from jail.  Moreover, his perception of the reasonableness of a communication is immaterial to whether it violates the DVTPO.  And even if the protected person consented to and facilitated the contact, as the trial court pointed out, the protected person could not give Raines permission to violate a court order.

{¶60}  For the foregoing reasons, we conclude that Raines has not shown error, let alone plain error, in the imposition of consecutive sentences for the VPO offenses. Accordingly, we overrule the third assignment of error to the extent it challenges the consecutive sentences for the VPO offenses.

### B.  Jail-Time Credit

{¶61}  Raines also contends that the trial court imposed an unlawful sentence with respect to his jail-time credit. Raines does not challenge the court's calculation of the

number of days of jail-time credit to which he is entitled. Instead, he asserts that the court erred by applying his jail-time credit to a single prison term rather than his aggregate sentence. Citing Adm.Code 5120-2-04(G) and *State v. Fugate*, 2008-Ohio-856, he asserts that when consecutive sentences are imposed, jail-time credit "is applied once against the aggregate term—not an individual term." Raines asserts that he "received consecutive sentences that yielded a 4.5-year term," so he was entitled to jail-time credit "against his aggregate 4.5-year term."

### 1. Legal Principles

**{¶62}** Initially, we observe that " '[t]he decision whether to credit pretrial confinement days is simply not part of the sentence.' " *In re D.S.*, 2016-Ohio-7369, ¶ 20, quoting *State v. Gregory,* 108 Ohio App.3d 264, 268 (1st Dist. 1995). " 'Credit for jail time is not open to tailoring to the individual case in the same sense as sentencing, because once the *sentence has already been rendered,* the remaining calculation is merely a computation of how much time has been served and how much remains.' " (Emphasis sic.) *Id.*, quoting *Gregory* at 268.

**{¶63}** Raines suggests the trial court made a legal error when it applied his jail-time credit to only one of his prison terms. Generally, we review an issue regarding whether a trial court misconstrued or misapplied the law de novo. *State v. Gavin*, 2022-Ohio-1287, ¶ 12 (4th Dist.) However, Raines did not challenge the trial court's jail-time credit order at the sentencing hearing, so he has forfeited all but plain-error review.

**{¶64}** R.C. 2967.191(A) states: "The department of rehabilitation and correction shall reduce the prison term of a prisoner * * * by the total number of days that the prisoner was confined for any reason arising out of the offense for which the prisoner was

convicted and sentenced, including confinement in lieu of bail while awaiting trial * * * as

determined by the sentencing court under division (B)(2)(g)(i) of section 2929.19 of the

Revised Code * * *."  R.C. 2929.19(B)(2)(g)(i) provides:

> (2) * * * [I]f the sentencing court determines at the sentencing hearing that a prison term is necessary or required, the court shall do all of the following:
>
> * * *
>
> (g)(i) Determine, notify the offender of, and include in the sentencing entry the total number of days, including the sentencing date but excluding conveyance time, that the offender has been confined for any reason arising out of the offense for which the offender is being sentenced and by which the department of rehabilitation and correction must reduce the definite prison term imposed on the offender as the offender's stated prison term * * *. * * *.

{¶65} Adm.Code 5120-2-04(E)-(G) explain how credit is applied depending on

the type of sentence the offender is serving, and at the time of Raines' sentencing, stated:

> (E) If an offender is serving two or more sentences, stated prison terms or combination thereof concurrently, the department shall independently reduce each sentence or stated prison term for the number of days confined for that offense.  Release of the offender shall be based upon the longest definite, minimum and/or maximum sentence or stated prison term after reduction for jail time credit.
>
> (F) If an offender is serving two or more sentences, stated prison terms or combination thereof, not to include a non-life felony indefinite sentence, consecutively, the bureau of sentence computation shall aggregate the sentences * * *. The department of rehabilitation and correction shall reduce the aggregate definite sentence * * * by the total number of days the offender was confined for all of the offenses for which the consecutive sentences, stated prison term or combination thereof were imposed.  Generally, when consecutive sentences, stated prison terms or combination thereof are imposed by multiple sentencing entries, the bureau of sentence computation shall reduce the aggregate sentence * * * by the sum of the days specified in each of the sentencing entries plus the number of days the offender was confined between the last sentencing date and the date committed to the institution.
>
> (G) If an offender is serving one or more non-life felony indefinite sentences consecutively, the bureau of sentence computation will independently

reduce the minimum and maximum sentence, by the total number of days specified in each sentencing entry. Unless otherwise instructed by the court, the bureau of sentence computation will include the number of days the offender was confined between the last sentencing date and the date committed to the institution.

Adm.Code 5120-2-04 (effective 5-27-21).

**{¶66}** In *Fugate*, the Supreme Court of Ohio considered "whether a defendant who is sentenced concurrently on multiple charges is entitled to have 'jail-time credit' applied toward all terms." (Footnote omitted.) *Fugate*, 2008-Ohio-856, at ¶ 1. In addressing an earlier version of Adm.Code 5120-2-04, the Supreme Court explained that when a defendant is sentenced to consecutive terms, jail-time credit is "applied only once, to the total term." *Id.* at ¶ 10. Therefore, "[j]ail-time credit applied to one prison term gives full credit that is due, because the credit reduces the entire length of the prison sentence." *Id.* at ¶ 22. "However, when a defendant is sentenced to concurrent terms, credit must be applied against all terms, because the sentences are served simultaneously." *Id.* "[A]pplying credit to one term only would, in effect, negate the credit for time that the offender has been held." *Id.* Therefore, the Supreme Court held "that when a defendant is sentenced to concurrent prison terms for multiple charges, jail-time credit pursuant to R.C. 2967.191 must be applied toward each concurrent prison term." *Id.*

### 2. Analysis

**{¶67}** Raines does not argue plain error, and even if we concluded that an obvious error occurred, Raines has not demonstrated a reasonable probability that it resulted in prejudice. Contrary to what Raines suggests, the relevant provision in this case is former Adm.Code 5120-2-04(F), not (G), because even though the court imposed consecutive sentences, they were definite sentences, not non-life felony indefinite sentences. Again,

former Adm.Code 5120-2-04(F) directed the bureau of sentence computation to "aggregate the sentences" and "reduce the aggregate definite sentence * * * by the total number of days the offender was confined for all of the offenses for which the consecutive sentences * * * were imposed." As a practical matter, it is immaterial whether one aggregates the consecutive prison terms first and then subtracts 77 days of jail-time credit or subtracts 77 days of jail-time credit from the prison term on one count and then aggregates that term with the prison terms for the other counts. Under either calculation, the total time left to be served is the same. *See Fugate* at ¶ 22 (for consecutive sentences, "[j]ail-time credit applied to one prison term gives full credit that is due, because the credit reduces the entire length of the prison sentence"). Accordingly, we overrule the remainder of the third assignment of error to the extent it challenges the trial court's jail-time credit order.

## VIII. CONCLUSION

{¶68} Having overruled the assignments of error, we affirm the trial court's judgments.

JUDGMENTS AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENTS ARE AFFIRMED and that appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Gallia County Court of Common Pleas to carry this judgment into execution.

<u>IF</u> A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & Wilkin, J.: Concur in Judgment and Opinion.


For the Court


BY: _____
        Michael D. Hess, Judge



## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**